## Eliza Chapin v. Nathaniel P. Jacobs and others.

J. gave a mortgage for $10,000, payable in several installments. As further security for the first four installments, he gave a second mortgage on other premises, conditioned to pay said four installments as they respectively fell due. The second mortgage also contained a stipulation that whenever J. should build on the premises covered by the first mortgage, and cause the buildings to be insured for $2,000, and assign the policy to the mortgagee, and agree to keep the same so insured during the continuance of the first mortgage, then the mortgagee should discharge the second mortgage. J. built on the premises covered by the first mortgage, and caused the buildings to be insured, but did not assign the policy. The said four installments of the first mortgage having become due, and three of them remaining unpaid, a bill was filed to foreclose the two mortgages. J. (who had become insolvent) now tendered an assignment of the policy of insurance together with a written agreement to keep the buildings insured, which the holder of the mortgage declined to receive. It was *held*, that under the second mortgage J. had his election, to pay the said four installments as they fell due, or to perform the stipulation therein with respect to building and insuring; that his right to elect terminated when the moneys fell due, and he had no right thereafter to a discharge of the second mortgage on tendering the policy of insurance and agreement to keep insured.

*Heard May 8th, 9th and 10th. Decided July 21st.*

CHAPIN v. JACOBS.

Appeal from Wayne Circuit in Chancery.

On the fourth day of August, 1854, Nathaniel P. Jacobs purchased of Charles Seymour certain premises in the city of Detroit, for the purchase price of which he gave to said Seymour his bond, in the penal sum of $20,000, conditioned for the payment of $10,000 as follows: $500 on the fourth day of August in each of the following years: 1856, 1857, 1858, 1859 and 1860; and $1,500 on the fourth day of August in each of the following years: 1861, 1862, 1863, 1864 and 1865; together with interest on the principal sum, or such portions thereof as should remain unpaid, to be paid semi-annually. To secure the payment of these moneys, Jacobs at the same time gave Seymour a mortgage on the premises purchased, collateral to the bond.

At the same time also Jacobs, as additional security, gave to Seymour another mortgage, upon other premises in Detroit, with condition that if Jacobs should pay to Seymour the sum of $2,000, being the first four installments of $500 each to fall due on the first mortgage on the fourth day of August in each of the years 1856, 1857, 1858 and 1859, then the second mortgage should be void. The mortgage then contained this clause: "It is understood to be a part of the condition of this mortgage, that whenever the said Jacobs shall build on the premises covered by the mortgage to which this mortgage is collateral and referred to therein, and shall cause the buildings thereon to be insured for at least $2,000, and assign the policy of insurance of that amount to said Seymour, in a good and responsible insurance company, with an agreement to keep the same so insured for the benefit of said Seymour during the continuance of said mortgage to which this is collateral, that then the said Seymour shall release and discharge this mortgage."

This bond and the two mortgages were assigned by Seymour to one Hubbell, and by him to complainant. The first installment of $500 was paid, but the others remaining

unpaid, complainant, on the 27th of April, 1861, filed her bill in chancery to foreclose the two mortgages, for the installments then past due.

At the time of filing the bill Jacobs was insolvent. He had previous to that time erected a building on the premises bought of Seymour, and caused the same to be insured, but had not assigned the policy of insurance. On August 26th, 1859, he wrote to Hubbell, who then owned the mortgage, a letter in which he says: "I have the store insured, but do not wish to transfer the policy to you, the security without being sufficient; it being my intention, at the earliest possible moment, to raise money upon it to build up the block. Ten thousand dollars would be sufficient, in cash, to do it; and as that would be laid out on the property, the security would be ample, the stores costing me $7,500. I am in hopes an opportunity will occur this fall to carry out this plan."

After the bill was filed a policy of insurance and assignment, together with a written agreement signed by Jacobs, that he would keep the building insured in at least $2,000 in a good responsible insurance company, for the benefit of complainant, during the continuance of the first mortgage, were tendered to complainant, who refused to receive the same. A similar tender was also made to Seymour, and refused.

Upon these facts the Circuit Court in Chancery decreed the second mortgage to have been discharged by the said tender of the policies of insurance and agreement, and made the usual decree of foreclosure and sale upon the first mortgage. And the value of the premises covered by that mortgage being found not to exceed $8,000, a receiver of the rents and profits was appointed.

Complainant appealed from this decree. The only question in controversy in the Court below or in this Court was whether, upon the facts stated, the second mortgage was satisfied and discharged.

*H. K. Clarke* for complainant:

The first question is, whether the mortgagor still has the right, after the breach of the principal condition of the mortgage, by tendering a performance of the subordinate condition, to claim that his contract is fully performed, and that he is entitled to a discharge of the mortgage? The defendants affirm this. We deny it.

A mortgage is an estate created by a conveyance, intended to secure the performance of some act, such as the payment of money and the like, and to become void if the act is performed agreeably to the terms prescribed at the time of of making such conveyance:—1 *Washb. Real Pr.* 475.

The act was not "performed agreeably to the terms prescribed"—the estate of the mortgagee did not become void—it became "effectually an estate in the mortgagee."— 1 *Washb.* 475; 21 *Pick.* 355; *Mundy v. Monroe,* 1 *Mich.* 68.

It is not important for the purposes of this case to define this estate. It is enough to say that, in equity, it is regarded with such favor that it will be construed, if possible, to secure the payment of the mortgage debt:—2 *Cruise Dig. p.* 127, § 35; *Coote on Mortg. pp.* 391, 535; *Washb.* 516; *Baker v. Pierson,* 6 *Mich.* 544; 2 *Eden,* 78; 2 *Ves.* 377; 2 *Spence,* 669.

It may be regarded as an established principle, that *he who redeems must pay the whole debt:*—1 *Washb.* 555; 4 *Kent,* 162; 1 *Mich.* 72; 2 *Atk.* 267; 2 *Ves.* 372; 12 *Ves.* 48; 23 *Law. Rep.* 26; 2 *Cox,* 86.

The debt may be barred by the statute of limitations, yet the rights of the mortgagee to his security will be protected:— 29 *Barb.* 277; 4 *Cush.* 559.

These cases show the uniform practice and purpose of courts of equity, and to which there seems to be no exception, to protect the equitable rights of mortgagees. It is his right to have his debt, and when he demands no more than this, he is a favored party in a court of equity.—1 *Pow. on Mort.* 336; *Coote on Mort.* 393.

CHAPIN v. JACOBS.

The depriving of a mortgagee of any portion of his security, or weakening it as a security in his hands, when willing to accept what is due and discharge the mortgage, is as repugnant to a court of equity · as it is to enforce a forfeiture against a mortgagor who desires to pay his debt.

If it be said that the mortgagee in this case consented to accept one security for another, we insist that this consent cannot be supposed to contemplate any such substitution after the debt had become due. Security contemplates payment in the future, and aims to render it certain against the contingencies of changing circumstances, pending the period between the day of the promise and the day of performance. But why provide for or permit a change of security after the day of payment? Did the parties expect that the payment would not be made at the day, and deliberately provide for a new and less valuable security after the default? Unquestionably not. If the contract was not performed at maturity, both parties are presumed to contemplate an immediate enforcement of it. Why else did they not only provide for insurance, but for an annual renewal of it? If the substitution were to be made before the forfeiture, this would have been an appropriate provision, because the contingencies of lapse of time were to be provided for; but it would be appropriate only before maturity. It seems in the highest degree improbable that the parties contemplated any such substitution, unless it should be made before the debt became due or the right to commence proceedings to foreclose had accrued.

There is, however, another fact which has occurred since the mortgage was executed, which affects very materially the rights of the parties in equity; and that is *the insolvency of Jacobs.*

The form of the subordinate condition requires the mortgagee "to release and discharge the mortgage" on the performance of the condition. The position of the mortgagor here is that of a party seeking a specific performance of an agreement to release and discharge the mortgage.

10 MICH.—A2.

The defendants claim that Jacobs has performed the condition on which he became entitled to have the mortgage discharged. An essential part of that condition was the agreement to keep the premises insured during the continuance of the mortgage. And such an agreement by Jacobs, who was the party to be bound, has by his insolvency become valueless to the mortgagee; and it is therefore inequitable to compel the complainant to accept of it :—1 *Pow. on Mort.* p. 336.

The cases which determine when a decree for a specific performance will be made, furnish the proper analogies to determine this question.

A specific performance will not be granted where the party seeking it is not in a condition to perform it himself:— *Story Eq. Jur.* § 776; 14 *Ves.* 550.

If the thing to be done is payment in future—as for instance rent upon a lease—the insolvency of the party will be regarded as disenabling him from the performance of the condition. See 2 *Pars. on Cont.* 565; 8 *Ves.* 92; 14 *Ves.* 550; 1 *Keene*, 474; 6 *Wheat.* 528.

A party who claims a specific performance must show that he has in good faith and within the proper time performed his obligations :— 6 *Pet.* 393.

But no policy of insurance, or agreement to keep insured, was tendered until after this suit was commenced, five years, nearly, after the first forfeiture occurred, and two years after the whole debt had become due.

*D. B. Duffield* and *D. C. Holbrook* for defendants:

The stipulation in the second mortgage with respect to building and insurance, though not in the *form* of a covenant, is to be regarded as such by the Court :— 2 *Pars. on Cont.* 20, note *n*, and authorities cited; p. 23 and note *c*; 27 *Me.* 106; 15 *Penn. St.* 295, 307.

This second mortgage was in fact a mere collateral mortgage to be discharged by putting improvements on the

premises covered by the principal mortgage, and so enhancing that security.

This mortgage was subject to a condition that building upon the premises described in the principal mortgage, the effecting an insurance of $2,000 thereon, and the assignment of the policy to the mortgagee with the agreement specified, should operate as a discharge of the second mortgage. Thus, the building and insurance was to become a *substituted* security for this second mortgage.

And now the question arises whether such substituted security has not been furnished, and so the second mortgage discharged? In all cases the Court, in construing an instrument, aims to ascertain the substantial meaning of the parties. This is equally true whether the stipulation be a condition or a covenant.

Now it is clear that the substantial part of the condition was the putting on a building worth $2,000 or more, thus giving that increased value to the principal mortgaged premises. The insurance would be only a contingent security, and wholly collateral to the security furnished by the building itself. As long as the building was unburned, the policy was nothing.

Hence the erection of the building was, as long as the building stood, a substantial performance of the condition. And the holder of the mortgage cannot in a Court of Equity ignore this substantial performance, and insist that the collateral mortgage remains in full force.

Now suppose Jacobs had *covenanted* to do all the things named in the condition. Suppose the building erected, but the insurance not effected. In an action for the breach of the covenant could the plaintiff have recovered, if more than nominal damages, anything beyond the premiums for insurance?

It then appears, that at the time of the filing of this bill the holder of the mortgage had received and then enjoyed a substituted security of the full value stipulated for in the

condition. The only lack was, that this new security was not protected by insurance against contingent loss.

Now if, in fact, when this bill was filed, the complainant had the present enjoyment of the substituted security, and the only defect was a contingent hazard, he cannot equitably ask the aid of this Court to enforce the collateral mortgage as if nothing had been done.

The relief of this Court will be *equitable*. It would not do more than require us to remove the hazard. It would only require us to make the complainant's rights and security perfect; to make him good.

Thus equity allows mortgagors to *redeem*. It gives them time to pay the money, which secures them from sale or strict foreclosure.

And in like manner, it would allow us to perfect an imperfect performance of the condition, if the complainant's rights would be thereby fully secured. This would give the complainant full equitable relief.

But in fact we have already perfected the performance of the condition. We have done all that a court of equity would require us to do.

We refer to the cases in which Equity grants relief under conditions both subsequent and precedent. It intervenes to prevent the defect of rights by an unconscientious advantage, where there has been a failure in strict fulfillment: —2 *Conn.* 299; 1 *Edw. Ch.* 394; *Walk. Ch.* 405; 29 *Vt.* 358; 4 *R. I.* 225.

So Equity refuses to aid in enforcing any thing in the nature of a penalty:—*Crane v. Dwyer*, 9 *Mich.* 350. .

These cases are referred to, not as parallel, but because the principles on which they rest seem to have an important bearing.

MANNING J.:

On the fourth of August, 1855, Jacobs purchased of Seymour a piece of land, sixty feet square, on Jefferson

avenue, in the city of Detroit, for $10,000, payable as follows: Five hundred dollars on the fourth day of August 1857, 1858, 1859 and 1860; and fifteen hundred dollars on the fourth day of August 1861, 1862, 1863, 1864 and 1865, with interest. And to secure the payment of the purchase money and interest, Jacobs executed a mortgage to Seymour on the land purchased of him; and also at the same time as collateral security a second mortgage on another piece of land, with a condition that if Jacobs should pay to Seymour the sum of $2,000, part and parcel of the sum of $10,000 secured by the first mortgage, viz: the payments of $500 each, payable on the fourth day of August 1856, 1857, 1858 and 1859, the mortgage was to be void: It being understood and made a part of the condition, that, whenever Jacobs should build on the premises covered by the first mortgage, and should cause the buildings thereon to be insured in a good and responsible insurance company, for at least $2,000, and assign the policy of insurance to Seymour, and agree to keep the same so insured for the benefit of Seymour during the continuance of the first mortgage, that then Seymour should release and discharge the second mortgage.

A bill having been filed to foreclose the two mortgages for the installments of $500, due in 1857, 1858, 1859 and 1860, Jacobs insists that, having erected a building on the premises purchased of Seymour, and caused the same to be insured, and having since the filing of the bill tendered an assignment of the policy, he is entitled to have the second mortgage discharged, and that complainant can only have the first mortgage foreclosed.

Before inquiring into the facts on which a discharge of the second mortgage is claimed, it is necessary to determine the rights of the parties under it.

It is for the payment of the first four installments of $500 each, mentioned in the first mortgage. It was intended to secure their payment, and could be foreclosed for their

non-payment and for nothing else. It could not be foreclosed for the omission or refusal of Jacobs to build on the premises he had purchased of Seymour; or, having erected one or more buildings thereon, for his omission or refusal to insure; or, having insured, to assign the policy. Jacobs was under no obligation to Seymour to build, insure or assign the policy. It was optional with him to do any or all of them as he saw fit. The only effect of mentioning them in the condition of the mortgage was, if they were performed by Jacobs, to release the lien Seymour had on the premises mentioned in that mortgage for the first four payments mentioned in the first mortgage. If Jacobs performed before any of the said payments became due, to release the premises from all of them; if after a part had become due, from those only that were not due. The condition of the mortgage is in the alternative, to pay the $2,000, or to erect a building on the lot purchased of Seymour, get it insured, and assign the policy. Jacobs had a right to elect which he would do before the payments became due, but not afterwards. With the day of payment his right of election ceased; and if equity can in any case, where an election is lost by lapse of time, give relief—for we are not prepared to say there may not be such cases—the present is not one of them. No equities are shown on which such relief can be based. Jacobs is not injured. He is asked to pay what he agreed to pay, and no more. Seymour, or rather the complainant, who is the assignee of the two mortgages and the bond accompanying the first mortgage, asks and can receive no more than what is justly her due. And as Jacobs is insolvent, and it is probable that the premises covered by the first mortgage would not sell for enough to pay her, it would be inequitable to take from her the right she has to make a part of the debt due her out of the second mortgage.

So much of the decree as declares the $2,000 mortgage has been discharged must be reversed, and the decree be

so modified as to direct a sale of the premises mentioned in that mortgage for the $500 installments that became due ,in 1857, 1858 and 1859, with complainant's costs in this Court, unless redeemed.

CHRISTIANCY and CAMPBELL JJ. concurred.

MARTIN CH. J. dissented.