## JEMMISON *et al* v. GRAY *et al.*

1. **Practice**: EVIDENCE: SEPARATION OF WITNESSES. The exclusion of a defendant whom it is proposed to introduce as a witness, during the examination of his co-defendant, will not operate to reverse the case where it is not shown that prejudicial error resulted therefrom.

2.—— Where in such case it is not disclosed by the record that it was proposed to introduce as a witness the defendant thus excluded, that fact will be presumed.

3. **Damages**: MEASURE OF. The rule that the measure of damages for the non-delivery of personal property contracted for, where the price is not paid before delivery, is the difference between the contract price and the market value at the time and place stipulated will govern in all cases where no express stipulation enters into the contract itself to vary this rule.

4. —— SPECULATIVE DAMAGES. In arriving at the amount of damages under this general rule, the jury are confined to the actual condition of the market and prices at the stipulated time for delivery ; and they cannot consider the conjectural or probable effect upon the market and prices which might have resulted if the party claiming damages had gone into the market to buy there the property which the other party failed to deliver.

5. —— INSTRUCTION. In an action wherein damages were claimed by defendants for the non-delivery of property contracted for, the defendants asked the following instruction : "Defendants are not to suffer loss by reason of any fault or failure of plaintiffs, but they are to be made whole in allowance of damages ; and the jury are to take into consideration all the circumstances, and to allow the defendants such sum as in their opinion will protect them from the direct consequences of plaintiffs' failure, if any." *Held*, that the instruction was properly refused, as it furnished no rule for the estimation of damages, and because it would have a tendency to mislead the jury into supposing that it was their province to determine the amount of damages without regard to legal rules.

6. —— LIQUIDATED DAMAGES: CONTRACT: QUANTUM MERUIT. Where a contract for the delivery of a large number of railroad ties provided that monthly estimates should be made by the engineer of the road of the ties delivered, and that upon presentation of such estimates certified by said engineer, the defendants were to pay the same to plaintiff, less ten per cent, which was to be retained as security for the com-

pletion of the contract; and it further provided, that when in the opinion of said engineer, the contract had been fully performed on the part of the plaintiff, and the same was certified by the said engineer in writing, together with his estimates aforesaid, then defendants should, within twenty days after the receipt of such certificate pay to the plaintiffs the sum which according to the contract was due, it was *held*, in an action wherein damages was claimed for the failure of plaintiffs to deliver the full amount contracted for.

1. That the ten per cent reserved on the amount delivered, as provided by the contract, should be treated as a penalty securing the damages actually sustained by the breach, and not as liquidated damages.

2. That the plaintiffs were not debarred by the terms of the contract from recovering on the *quantum meruit* for the ties actually delivered by them

7. —— MARKET VALUE. The fact that the number of ties which plaintiff failed to deliver could not have been purchased for immediate delivery at the time and place when and where, by the terms of the contract, they were to be delivered, would not of itself establish that there was no market price for such ties at such time and place.

8. **Jury and verdict**: SPECIAL FINDINGS. The general verdict of the jury will not be disturbed by their special findings, if it can be made to stand consistently therewith upon any count of the petition.

9. **New trial**: CERTIFICATION OF EVIDENCE. The action of the court below in overruling a motion for a new trial, based upon the ground that the verdict is against the evidence, will not be reviewed upon a bill of exceptions which purports to contain *substantially* all the evidence.

10. **Contract**: JURISDICTION. The contract before referred to also contained a provision to the effect that if any dispute arose during the execution of the contract the engineer should, in all cases, decide such questions, and that his estimates and conclusions should be final and conclusive  *Held*, that this did not constitute the engineer the final umpire to determine mixed questions of law and fact that might arise, nor prevent a recovery by the plaintiffs in the present action

*Appeal from Wapello Circuit Court.*

WEDNESDAY, OCTOBER, 5.

THE petition alleges that the plaintiffs agreed to deliver to the defendants, at a designated place, 60,000 railroad ties, at the stipulated price of fifty-two cents per tie; that relative monthly estimates were to be made by the chief engineer, which estimates were to be paid, less ten per cent; that plaintiffs under this contract, delivered 47,787 ties, which were inspected by the chief engineer and received by the defendants; that defendants have paid on account of said ties the sum of $22,220, leaving a balance, including the ten per cent, of $2,473.24. Judgment is asked for this amount.

The answer admits the delivery of 47,787 ties; alleges that all have been paid for, except 300 and the ten per cent retained under the contract; and claims damages in the sum of $4,000, for the failure of the plaintiffs to deliver 60,000 ties, as stipulated in the contract. The cause was tried to a jury who returned a verdict for plaintiffs in the sum of $1,868.10. Judgment was entered upon the verdict, from which defendants appeal. The remaining facts will appear in the opinion.

*Hendershott & Burton* for the appellants.

*Stuart Brothers* for the appellees.

DAY, J.—I. At the trial of the cause the defendants introduced one of their number, L. E. Gray, as a witness.

1. PRACTICE: evidence; separation of witnesses.

At the request of plaintiffs, and against the objection of defendants, the court required the defendants Baker and Madson to retire during the examination of Gray. This action of the court is assigned as error. Whether or not Baker and

Madson were also sworn as witnesses prior to their exclusion, the record does not disclose. If it was not proposed to introduce this testimony, we can conceive of no motive for the request that they be separated, no reason for granting it. This court will not presume the existence of a state of facts rendering the action of the court below purely arbitrary.

Assuming, then, that the defendants proposed to introduce Baker and Madson as witnesses, was there such error in the order excluding them from the court room during the examination of their co-defendant, Gray, as to demand a reversal of the case ?

At common law the granting of an order for the separate examination of witnesses was in the discretion of the court. Such order, however, upon the application of a party was rarely refused. The attorney of a party, whose presence was necessary, was excepted from the operation of the order. The reasons for applying this exception to the party himself seem as many and as cogent.

We would not sustain an order excluding a party during any portion of the trial, if the record disclosed any predjudice resulting from such exclusion. It does not appear, however, that the defendants sustained any injury from the order in this case.

It is true the bill of exceptions recites that "the counsel of defendants stated to the court that the personal attendance of their clients was necessary to assist them in examining their co-defendant." It is not shown however, that Baker and Madson were cognizant of any fact of which the defendants' counsel had not been advised, nor that, in consequence of their absence, the examination of Gray failed to elicit any circumstance material to the interests of the defendants. We will not presume a prejudice where none is made to appear.

II. The witness Gray, when on the stand, was asked the

following question : " State whether or not the defendants
had a contract with Wolf, Carpenter & Co. to
furnish them with ties, to be used in the con-
struction of the B. & M. Railroad, at the time the con-
tract was entered into between plaintiffs and defendants."
To this question the defendants objected for the reason,
that, if there was such a contract, it could not affect the
question of damages under the contract in this case, and
that the rule of damages must be determined by the con-
tract between the plaintiffs and defendants, and cannot
be affected by any contract between the defendants and
other parties.    Pending this objection the defendants
offered to show, " that at and before the execution and
delivery of the contract between the parties, the defend-
ants herein had entered into a contract with Wolf, Car-
penter & Co., who were then engaged in constructing the
B. & M. R. R. to furnish them with 200,000 ties, such as are
required in every respect in the contract between plaintiffs
and defendants.    That said ties were to be furnished on the
1st day of October, 1860, or defendants would forfeit the
reserved fund of ten per cent, which sum amounted to a
number of thousands of dollars.    That plaintiff knew of
this contract and contracted with reference to it.    That
the ties plaintiff were to furnish were to form a part of
the 200,000.    That defendants, in order to prevent great
loss to themselves, were compelled to, and did, furnish
ties, to fill plaintiffs' contract, to wit : 12,213, at sixty-five
cents per tie ; that they could not procure them at a less
rate."    The plaintiffs objected to said testimony for the
reason " that it was not proper to be considered in this
case."    The action of the court sustaining this objection
is the next error insisted upon in the argument of the
appellants.    It is conceded that the general rule of dam-
ages for the non-delivery of personal property, when the
price is not paid or advanced before the time for delivery,

3. DAMAGES:
measure of.

is the difference between the contract price and the market value at the time and place stipulated for the delivery. It is claimed, however, that special circumstances render a different measure of damage applicable, and that this testimony, excluded by the court, would have tended to establish the conditions rendering enhanced damages proper. This point underwent direct discussion in the case of *Cannon* v. *Folsom*, 2 Iowa, 101.

In that case, ISBELL, J., after referring to the general rules affecting the measure of damages for failing to deliver goods, used the following language : "These are well established rules of law. A party contracting to deliver goods at a specified time and place, where no express stipulations enter into the contract to vary his liability, may be fairly presumed to have contracted with relation to them. There is nothing in the contract at the foundation of this suit that tends to show that any other than the ordinary liability was stipulated for. The contract is in writing, and the plaintiff, in his recovery, must be confined to it. It is not competent to enlarge it by parol evidence, or by special pleading." Counsel for appellants seem to concede that this case, if approved and followed, is decisive of the present question ; but they claim that it " does not seem to have been well considered by the court." The questions presented were ably argued by eminent counsel, who submitted exhaustive briefs, and the conclusion reached was concurred in by the entire bench. With it we are satisfied.

III. The next error insisted upon in the argument relates to the refusing to give certain instructions. The defendants asked the court to instruct the jury—

" 1. That although they may find that the defendants did, on the 25th day of August, 1869, or thereabouts, purchase 25,000 ties at sixty-five cents per tie, yet if none of these 25,000 ties were purchased for the plain-

tiffs, to go in for them on the contract with defendants, then plaintiffs had no interest in any of said ties, and defendants might furnish so many of them as were necessary in filling out plaintiffs' contract, and charge plaintiffs *what they were worth in the number required* (12,213) *at Rome or Mt. Pleasant, on the first day of October*, 1869."

" 2. That if 12,213 ties were worth, in the market at Rome or Mt. Pleasant, on the 1st of October, 1869, for immediate delivery, seventy-five cents per tie, then if defendants supplied said number, 12,213, from said 25,000 ties, they had a right to that price, seventy-five cents from plaintiff."

" 3. That if 12,213 ties were worth, at Rome or Mt. Pleasant, on the 1st day of October, 1869, for immediate delivery, seventy-five cents per tie, then the measure of defendants' damages for non-delivery by plaintiffs of this number would be the difference between seventy-five cents and fifty-two cents, or twenty-three cents per tie."

The court refused these instructions and gave the following : " 12. Although you may find that the defendants did, on the 25th day of August, 1869, or thereabouts, purchase 25,000 ties at sixty-five cents per tie, yet, if none of these 25,000 ties were purchased for the plaintiffs, to go in for them on their contract with defendants, these plaintiffs had no interest in any of said 25,000 ties, and defendants might furnish so many of them as were necessary in filling out plaintiffs' contract, and charge defendants *the fair marketable value of such ties at the time and place of delivery, to wit: October* 1, 1869, *at Rome or Mt. Pleasant, as named in the contract."* There was no error in refusing the instructions asked, nor in giving the one substituted by the court. It recognizes the general rule of damages, applicable to the failure to perform a contract to deliver personal property at a stipulated time and place.

The defendant also asked she court to give to the jury the following instruction : " 4. That in finding the value of railroad ties at any given time or place, it is proper for the jury to take into consideration the scarcity of ties, the difficulty or impracticability of getting them, the quantity required, the length of time in which they are to be delivered, the demand for them, and such like circumstances." The court refused to give this instruction, and gave the following :

4.— specula-
tive damages.

"8. While it is proper for you to take into consideration the amount of the ties plaintiff was in default in not delivering, the condition of the market, the scarcity or plenty in the market, the time of delivery, the demand and supply, the actual state of the market as proved, so far as they aid you in determining the market value of such ties, at such times and places, yet it is not proper for you to take into consideration what might have been the probable consequences resulting upon the market had the defendants gone into the market on that day to buy the 12,000 ties, to be delivered at once, as that would be remote and speculative."

There is no error in this modification of the instruction asked by defendants. The market value of the article on the day of delivery requires the investigation of the actual condition of the market, and does not warrant the consideration of the conjectural consequences of a state of things which did not exist. Sedgwick on Measure of Damages, 2d ed. 274, n. 1.

The defendants further asked the court to instruct the jury : " That defendants are not to suffer loss by reason of any fault or failure of plaintiffs, but they are to be made whole in an allowance of damages, and the jury are to take into consideration all the circumstances, and to allow the defendants such sum as in their

5.—instruction.

opinion will protect the defendants from the direct consequences of plaintiffs' failure, if any."

This instruction was properly refused; it furnishes no *rule* for the estimation of damages. It might, if given, have led the jury into the error of supposing it was their sole province to determine the amount of damages, without control or restraint of the law.

IV. The defendants assign error upon the giving of certain instructions by the court. The eighth and twelfth

6.——liquidated instructions have been noticed. The defenddamages : contract : quantum ants object to the first and second instructions meruit. given by the court.

These instructions are as follows : "1. The plaintiffs in this case concede that they have not complied with the terms of their contract, and it being admitted that they did furnish to defendants 47,787 ties, under the contract sued upon in this case, and that by the terms of their contract they were to furnish 60,000 ties, which leaves a balance of 12,213 ties which were not furnished by the plaintiffs under the contract, and it being admitted further, that in this case the plaintiffs have been paid, for the ties delivered, the contract price less ten per cent, except for 300 ties, for which it is claimed and conceded that nothing has been paid, this leaves the only question for you to determine to be, what amount if any, the plaintiffs or defendants are entitled to recover ; and if you find the plaintiffs are entitled to recover, then they would be entitled to the contract price for the ties delivered as aforesaid, less the payments made, and less the damages resulting from their failure to deliver the balance of the ties, to wit, 12,213 ties."

"2. The measure of damages to the defendants in this case, for the failure to deliver the 12,213 ties, is the difference between the contract price and the fair marketable value of the ties at the time and place of

delivery, in other words, you will inquire and determine what the fair market value of ties was on the first day of October, 1869, at the place or places named in the contract for delivery, and after you have ascertained such fair marketable value and contract price, if you find there is any difference, this difference would be the measure of damages, and the case would stand thus: First, ascertain the value of the 47,787 ties at the contract price, fifty-two cents, in all $24,849.24. Then ascertain the amount of payments, which is $22,223.92. Then ascertain the damages, and add these last two together, and the difference between this and the value of the ties at the contract price would be, if you find any difference, what plaintiffs should recover, with interest at six per cent, from the time it was due ; and if you find that the damages and payments exceed the value of the ties delivered at the contract price, the defendants would be entitled to recover against the plaintiffs that amount."

The objection made to these instructions is, that owing to the terms of the contract the plaintiffs can recover nothing, or, at most, the contract price of 300 ties, less ten per cent. The provisions of the contract upon which this position of defendants is based are as follows: "It is agreed that relative monthly estimates shall be made by the chief engineer, as the work progresses, of the ties delivered, and upon presentation of such estimates, certified by said engineer, the said Gray, Madson & Baker will pay the same less ten per cent of the amount *to* be retained as *security* for the completion of the contract.

"It is further agreed, that whenever in the opinion of the chief engineer this contract shall be completely performed on the part of the party of the first part, and the said engineer shall certify the same in writing, together with the estimates as aforesaid, the said Gray, Madson & Baker shall, within twenty days after the receipt of such

certificate, pay to the party of the first part the sum which according to this contract, may be due.

" And the said Gray, Madson & Baker agree, that when in the opinion of the chief engineer this contract shall be wholly completed on the part of the party of the first part, they will pay for such work as follows : For ties delivered, fifty-two cents each."

That a party who has failed to perform in full his contract may recover compensation for the part performed, see the cases of *Pixler* v. *Nichols*, 8 Iowa, 106; *McClay* v. *Hedge*, 18 id. 66 ; following *Briton* v. *Turner*, 7 N. H. 481.

It is claimed, however, that the reserved ten per cent retained under the contract must be regarded as liquidated damages, and hence cannot be recovered. We are not inclined so to construe the contract. The ten per cent is not reserved as liquidated damages, but *as security for the completion of the contract*. If by the agreement it is doubtful whether the parties intended that the sum specified should be a penalty or liquidated damages, courts incline to treat the contract as creating a penalty to cover the damages actually sustained by the breach and *not* as liquidated damages. *Foley* v. *McKeegan*, 4 Iowa, 1.

We cannot believe that the parties to this contract intended the ten per cent reserved, as liquidated damages. It would afford a very inequitable rule for the estimation of damages. If the plaintiff had delivered but an inconsiderable number of the ties, ten per cent upon the amount delivered would be a very inadequate sum, while if he had failed but in a small number it would be excessive. Under this rule, the nearer the plaintiffs approach the completion of their contract the heavier to the damages—to which they must respond—become. Plaintiffs liability *increases* as defendants' injury diminishes.

It is next claimed, that, if the reserved ten per cent is

treated as a fund in the hands of defendants to secure the completion of the contract, the contract in express terms makes the payment of the ten per cent to depend upon the completion of the work to the acceptance of the engineer, and that, until such completion, no recovery of the ten per cent can be had.

From the provisions of the contract, that, " when in the opinion of the chief engineer the contract shall be completely performed, * * * the said Gray, Madson & Baker shall pay the sum which, according to the *contract,* may be due," it does not follow that *without* such completion the plaintiff can *not* recover on the *quantum meruit* for the part performed.

The authorities cited by defendants, in support of their views on this point, are from states which deny any relief to a party performing his contract in part only, and hence are not applicable here, where, as we have seen, a different rule obtains.

In the instructions which we are now considering the jury were told that the plaintiffs were entitled to recover, for the ties delivered, the contract price.

Defendants' counsel, in their argument, seem to concede the correctness of the instructions upon this point. The record does not contain all the evidence introduced. Hence we will presume that the evidence established the reasonable value to be as great as the contract price, and that the giving of these instructions, if error, was error without prejudice.

In the third instruction of the court, the jury were told that the place at which they were to determine the marketable value of ties, in estimating the defendants' damages, was the place named in the contract for the delivery of the ties. Defendants claim that this instruction was erroneous, because the contract provides that defendants shall not purchase ties between or at the points named in the

contract for the delivery. A sufficient answer to this position is, that upon a breach of the contract by the plaintiffs the defendants were released from a performance of its conditions. The ninth and thirteenth instructions recognize the same principle as the third and need no further notice.

The jury were charged in the tenth instruction that "the fact, if proven, that 12,213 ties could not have been purchased for immediate delivery in the market at the places where said ties were to be delivered on the first day of October, 1869, would not of itself, establish the fact that there was not a market price for such ties, at such time and place." We fail to discover error in this instruction.

7. ——market value.

No special objection is urged to the remaining instructions. They are in harmony with the views herein expressed.

V. Defendants further claim that the court erred in refusing to enter judgment for them on the special findings. It is urged that the jury found that no part of the written contract had been changed or waived by defendants, and that the contract furnishes the rule by which the liability should have been measured. Had this action been brought upon the *contract*, this position would be correct. The plaintiffs, however, in the second count of their substituted petition, seek to recover upon a *quantum meruit*. Upon this count the general verdict can be sustained.

8. JURY AND VERDICT: special findings.

VI. The next error urged relates to the overruling of the motion for a new trial. The first, second, third, fourth and sixth points in the motion have already been considered. The fifth relates to the overruling of the demurrer to the substituted petition of plaintiff. Our attention is especially directed to the seventh and eighth points of the demurrer. These

9. NEW TRIAL: certification of evidence.

points, briefly stated, are; that the plaintiff shows that they have not performed their part of said contract, and that by the contract, the defendants are not to pay the reserved fund until the finale completion of the contract. The views of the court upon these points are expressed in considering the instructions. The last point insisted upon in the motion for new trial is, that " the verdict of the jury is against the evidence, and for too large an amount. As the bill of exceptions purports to contain the evidence only "substantially," this point cannot be considered. *Lea* v. *Roads*, 22 Iowa, 408, and cases there cited.

VII. The plea to the jurisdiction was properly over-ruled. The contract provides, that if any disputes arise

10. CONTRACT: jurisdiction during the prosecution of the contract, the chief engineer shall, in all cases, decide such questions, and his estimates and decisions shall be finale and conclusive. This provision in the contract may well apply to questions as to the quality and number of ties delivered, as to whether the work was being prosecuted with sufficient energy, and to others of like character likely to arise during the progress of the work. It cannot properly be construed to constitute the engineer the finale umpire to decide mixed questions of fact and law, and to determine the ultimate question of the plaintiffs' right to recover.

The remaining alleged errors have all been noticed in the determination of the points discussed.

The judgment of the circuit court is

Affirmed.