## WALKER, ADMINISTRATOR, *v.* BEMENT.

[No. 7,904. Filed March 7, 1911. Rehearing denied June 7, 1912.]

1. APPEAL.—*Assignment of Errors.—Failure to Carry Demurrer to Answer Back to Complaint.—Question Presented.*—An assignment of errors in the failure of the trial court to carry back a demurrer to a paragraph of answer and sustain it to the complaint presents the question of the sufficiency of the complaint on appeal.   p. 651.

2. EVIDENCE.—*Value of Corporate Stock.—Prima Facie Evidence.*—The par value of a share of corporate stock is *prima facie* its actual value.   p. 651.

3. MORTGAGES.—*Security for Loan of Stock.—Foreclosure.—Complaint.—Allegation as to Value of Stock.—Par Value.—Sufficiency.*—A complaint to foreclose a mortgage conditioned for the return to mortgagee of certain stock loaned to the mortgagor or the payment to mortgagee of its par value, which alleged a failure to return the stock and averred the par value of such stock, was sufficient as against a demurrer for failure to allege the market value thereof, since, in the absence of an averment to the contrary, the statement of its par value amounted to an averment that it was actually worth its face.   p. 651.

4. PLEADING.—*Answer.*—*Demurrer.*—It is not error to sustain a demurrer to a paragraph of answer when the matter pleaded therein may be proved under the general denial.   p. 652.

5. APPEAL.—*Briefs.*—*Matters Not Argued.*—Where, under the head of "Points and Authorities" in appellant's brief, the propositions of law stated and the authorities cited in support of appellant's contention that the trial court erred in sustaining a demurrer to certain paragraphs of answer are of little aid to the court in determining the question, and the matters arising on such demurrer are not argued, the court will not pass on the sufficiency of such paragraphs of answer.   p. 652.

6. MORTGAGES.—*Security for Loan of Stock.*—*Construction.*—*Satisfaction.*—A mortgage executed to secure the return of certain stock loaned to the mortgagor and conditioned for the payment to mortgagee of its par value in case of failure to return such stock, but which fixed no time for its return, made the stock returnable on demand, so that on the failure or refusal of the mortgagor to return the stock on demand, or within a reasonable time thereafter, the rights of the parties became fixed and the mortgagor could not thereafter insist on a discharge of the mortgage by a return of the stock.   p. 652.

7. BAILMENT.—*Loan of Stock.*—*Obligation of Borrower.*—The mere loan of stock gives rise to no obligation on the part of the borrower except that of returning it on demand, and the right of the lender to demand money for the stock can not arise until there has been a failure to return on demand, and arises only out of the breach of such obligation.   p. 655.

8. MORTGAGES.—*Security for Loan of Stock.*—*Construction.*—*Liability Secured.*—Where a mortgage recited that the mortgagee had previously loaned the mortgagor corporate stock of a certain par value and that the mortgagor had pledged said stock to secure certain of his debts, and contained the provision that it was to secure to the mortgagee the return of said stock, or the payment to her of its par value, and to indemnify her against loss on account of having loaned such stock to mortgagor and his subsequent pledge thereof, such mortgage fixed a lien on the land described for the payment to mortgagee of actual damages up to the amount of the par value of such stock in the event of failure to return.   pp. 655, 656.

9. MORTGAGES.—*Construction.*—*Intention of Parties.*—In the construction of a mortgage, the intention of the parties as gathered from the language of the instrument, considered in the light of the settled rules of law relating to the construction of such contracts, governs.   p. 656.

10. MORTGAGES.—*Security for Loan of Stock.*—*Construction.*—*Liability of Mortgagor.*—Although the lien of a mortgage executed to

secure the return to mortgagee of certain stock loaned to mortgagor, or the payment of its par value in the event of failure to return, is limited to the amount of the par value of such stock, the borrower, on failure to return the stock, becomes personally liable for its value even though that value is in excess of the par value. p. 657.

11. CONTRACTS.—*Penalties.—How Regarded in Equity.*—A court of equity regards a penalty in a contract as intended only to secure its fulfillment, and not as a source of profit or advantage in the event of a default, so that where a breach admits of compensation the injured party will be compelled to accept what is just and will not be permitted to make use of the letter of his contract to obtain more. p. 657.

12. DAMAGES. — *Liquidated Damages. — Penalty. — Distinction.* — When the damages likely to be occasioned by the breach of a contract are uncertain, and the sum fixed to be recovered on such breach is not grossly excessive or unjust, it will be treated as liquidated damages; but if the damages likely to be occasioned are susceptible of certain proof, and the amount stipulated to be paid on the breach is in excess of that amount, it will be treated as a penalty. p. 658.

13. BAILMENT.—*Loan of Stock.—Failure to Return.—Damages.—Measure.*—Where corporate stock is loaned to another under an agreement to be returned to the owner on demand, the damages resulting from a failure to return such stock would be its market value at the time of the demand, or, in the absence of a market value, its actual value, unless a higher value could be shown between the date of demand and the time of trial, in which event the higher value would be the measure of damages. p. 658.

14. ESTOPPEL.—*Equitable Estoppel.—Equitable Election.—Position in Judicial Proceedings.*—Where, after executing a mortgage to secure the return of certain stock of the par value of $19,300 loaned to him by the mortgagee, the mortgagor became a bankrupt, and, being unable to return the stock, listed the real estate described in the mortgage in his schedules in the bankruptcy proceeding as subject to a mortgage of $19,300, and listed the claim of the mortgagee as a secured claim for the sum of $19,300, the principles of an equitable election do not apply and, in an action subsequently brought by the mortgagee for foreclosure, the position assumed by him in the bankruptcy proceedings does not preclude those claiming under him from showing the actual value of such stock. p. 659.

15. ESTOPPEL.—*Equitable Estoppel.—Equitable Election.*—Equitable election is the obligation imposed upon a party to choose between two inconsistent or alternative rights where there is a clear intention that he should not enjoy both. p. 659.

From Vanderburgh Circuit Court; *W. M. Wheeler,* Special Judge.

Action by Mary V. Bement against W. Henry Walker, as administrator of the estate of George W. Bement, deceased, and others. From a judgment for plaintiff, the defendant Walker appeals. *Reversed.*

*Fred M. Hostetter* and *William D. Hardy,* for appellant.

*George A. Cunningham* and *Daniel H. Ortmeyer,* for appellee.

LAIRY, J.—This was an action brought by appellee, Mary V. Bement, in the court below against appellant, administrator of the estate of George W. Bement, deceased, and Mertina W. Bement, his widow, Mary C. Bement, his mother, they being his only heirs, and Peoples Savings Bank of Evansville, Indiana, for the foreclosure of two mortgages.

The complaint was in two paragraphs. There is no question made as to the first paragraph of complaint or the mortgage on which it is based. All of the questions presented by this appeal arise out of the second paragraph of complaint, and the construction of the mortgage described and set out as an exhibit to this paragraph. This mortgage, omitting the description of the real estate, and the acknowledgment, is in the words and figures following:

"Whereas, on the 26th day of November, 1902, Mary V. Bement loaned to George W. Bement, Jr., one hundred and ninety three shares (193) of the capital stock of the Bement-Seitz Company, of the par value of One Hundred Dollars ($100.00) per share, amounting in the aggregate to Nineteen Thousand Three Hundred Dollars ($19,300) par value; and

"Whereas, the said George W. Bement, Jr., afterwards pledged said shares of stock to Gansevoort Bank, N. Y., for the payment of certain debts of the Ohio Valley Produce Company, and said stock now remains in pledge for the amount of said debts;

"Now, therefore, this indenture witnesseth, that said George W. Bement, Jr., unmarried, mortgages and

warrants to the said Mary V. Bement, the following described real estate, situate in the County of Vanderburgh, and the State of Indiana, to-wit:   *   *   *

"To secure to the said Mary V. Bement the return of said stock or the payment to her of its par value, and to indemnify her against loss on account of her having loaned said stock to George W. Bement, Jr., and the pledge afterwards made of said stock as above recited.

"In Witness Whereof, the said George W. Bement Jr., has hereunto set his hand and seal this 21st day of August, 1903.

George W. Bement, Jr."

- The second paragraph of the complaint, which seeks the foreclosure of the mortgage heretofore set out, avers, in substance, that, prior to November 26, 1902, plaintiff was the owner of 193 shares in the Bement-Seitz Company of the aggregate value of $19,300; that at about said date, plaintiff loaned and transferred said stock to George W. Bement at his request; and that he, in consideration thereof, agreed to return to plaintiff either the stock in specie or its par value; that shortly after appellee loaned said stock to George W. Bement he pledged the same to the Gansevoort Bank of New York, to secure an indebtedness of about $25,000; that afterward, on August 21, 1903, in consideration of said loan and transfer, and to secure to plaintiff either the return of said stock or the payment to her of the par value thereof, said George W. Bement executed and delivered to her the mortgage heretofore set out; that afterward the Gansevoort Bank caused said stock to be sold for the payment of the debt for which it was pledged, and bid it in for $15,000, and that thereupon said bank became the owner of said stock, and is still the owner thereof; that said George W. Bement wholly failed to return said stock to plaintiff, or to pay to her the par value thereof, or any part thereof, and that there is now due plaintiff on account thereof $19,300, together with interest; that on December 2, 1904, said George W. Bement was adjudged a bankrupt: that the value of his

real estate, as fixed by the schedule filed in such proceeding, was $7,500; that plaintiff's said indebtedness was scheduled as a secured claim in the sum of $19,300, and, in addition thereto, there was also scheduled a prior mortgage to the Peoples Savings Bank of Evansville, Indiana, in the sum of $6,000, the latter mortgage being the one on which the first paragraph of complaint is based; that in the course of said bankruptcy proceedings, an order for the sale of said real estate was made, subject to both of said mortgages, and said sale was so made and confirmed; that said real estate was purchased at said sale by Philip W. Frey, who conveyed it to George W. Bement; that said George W. Bement was granted his discharge in bankruptcy on March 22, 1905; that on June 22, 1907, George W. Bement platted said land into lots, and laid out an addition, known as Oakhurst Place, and afterward entered into an agreement with plaintiff by which plaintiff consented that he might sell lots in said addition, on the condition that the proceeds of such sale should be applied first to the payment of the mortgage held by this plaintiff; that said George W. Bement did sell certain lots in said addition, and that plaintiff, through her attorney in fact, did release the mortgage as to the lots so sold; that after the sale of said stock by the bank, as aforesaid, George W. Bement did not have at any time 193 shares of stock in the Bement-Seitz Company, and that he was unable at all times to return said stock or any part thereof; that plaintiff repeatedly demanded the return of said stock; that said George W. Bement married defendant Mertina Bement on March 24, 1906, and that prior to that date, he had been at all times an unmarried man; that he died on January 29, 1908, intestate, leaving defendant Mertina Bement, his wife, and defendant Mary C. Bement, his mother, as his sole heirs at law; that on January 31, 1908, defendant W. Henry Walker was appointed administrator of his estate, and is now acting as such.

The complaint contains other averments, which are not

necessary to be considered in the decision of the questions presented on this appeal.

No demurrer was filed to the second paragraph of complaint, but a demurrer for want of facts was sustained to each of the paragraphs of affirmative answer filed by appellant to this paragraph of complaint. One of the assignments of error relied on is that the trial court erred in failing to carry back the demurrer filed to the second paragraph of answer and sustain it to the second paragraph of complaint. This presents the question to this court as to whether the second paragraph of complaint states facts sufficient to constitute a cause of action. *McIntosh* v. *Zaring* (1898), 150 Ind. 301, 49 N. E. 164; *Hall* v. *Brownlee* (1902), 28 Ind. App. 178, 62 N. E. 457.

The only objection seriously urged against the complaint is that it does not contain any averment that the stock described in the mortgage had any market value and that the actual value of said stock is not stated. It is claimed by appellant that, under a proper construction of the mortgage, only the actual value of such stock could be recovered; and that the complaint is insufficient for want of an averment showing the market value of such stock at the time it should have been returned, or, in the event it had no market value, showing its actual value at such time. The par value of a share of stock in a corporation is *prima facie* its actual value. *Harris's Appeal* (1888), 12 Atl. (Pa.) 743; *Brinkerhoff-Harris, etc., Sav. Co.* v. *Home Lumber Co.* (1893), 118 Mo. 447, 24 S. W. 129; *Moffitt* v. *Hereford* (1896), 132 Mo. 513, 34 S. W. 262. The complaint contains an averment of the par value of the stock, and this, in the absence of any allegation to the contrary, amounts to an averment that the stock was actually worth its face, and is sufficient as against a demurrer. The complaint must be held sufficient.

This brings us to a consideration of the several paragraphs of affirmative answer filed by appellant.

The second paragraph of answer avers that plaintiff has suffered no loss or damage whatever by reason of the failure of defendant's decedent to return the stock referred to in the complaint. This paragraph does not aver in direct terms that this stock was of no value; but, even though it should be held to mean that the stock in question never had any value, there was no error in sustaining the demurrer addressed thereto, for the reason that such fact could have been proved under the general denial.

We decline to discuss the sufficiency of the third and fourth paragraphs of answer. The questions arising on the demurrer to these paragraphs of answer are not argued by appellant in his brief. Under the head of "Points and Authorities" the statement is made, under separate headings, that the court erred in sustaining a demurrer to each of these paragraphs of answer, but the propositions of law stated and the authorities cited under these heads are of little aid to the court in determining the question involved in the ruling of the court on the demurrers to these paragraphs of answer. Besides, this case must be reversed for other reasons, and as the pleadings will probably be reformed before another trial, the questions presented by these paragraphs of answer may not again arise.

The questions which are decisive of this appeal arise on the ruling of the trial court in sustaining the demurrers to the fifth and sixth paragraphs of appellant's answer.

The fifth paragraph alleges, in substance, that after the commencement of this suit, and before the filing of this paragraph of answer, the administrator of the estate of George W. Bement procured from the Gansevoort Bank 193 shares of the capital stock of the Bement-Seitz Company for the purpose of tender, and that stock certificate number 34, for 193 shares of stock issued by said company, a copy of which is set out in the pleading, was duly assigned and delivered to said administrator by said

bank. This paragraph further avers that said administrator was unable to tender said stock either to the plaintiff or to her attorney of record, for the reason that they were both outside of the United States; that one Sebastian Henrich was and had been continuously since April 15, 1901, duly authorized by plaintiff, in writing, to collect and receipt for any money due plaintiff, and to cancel and satisfy any mortgage or mortgages given plaintiff, and to do and perform all and every act and thing requisite in and about the premises as fully to all intents and purposes as the plaintiff might and could do if personally present. The answer sets out a copy of the writing as a part of the pleading, and then avers that on August 12, 1909, defendant administrator unconditionally tendered to said Henrich, as attorney in fact of said plaintiff and for her use and benefit, the certificate of stock, together with $10 in legal tender money to reimburse her for costs incurred; that said Henrich refused said tender, and that said administrator, on September 6, 1909, placed said stock in the custody of the trial court, together with the $10 previously tendered, and offered to confess judgment for such further amount, by way of costs and attorneys' fees, as, in the judgment of the court, plaintiff might be entitled to receive.

The complaint avers that, before the death of George W. Bement, plaintiff repeatedly demanded of him the return of the stock mentioned in the mortgage sued on, and that he wholly failed to deliver it to plaintiff. This paragraph of answer does not deny the demand and refusal to deliver the stock as alleged in the complaint, and no facts are averred therein showing any legal excuse for such failure to deliver said stock on demand. The mortgage in suit fixes no time for the return of the stock, and therefore it was returnable on demand. On the demand of the stock, and the refusal or failure to deliver it, the rights of the parties became fixed. If the mortgagor failed to return the stock on demand, or within a reasonable time thereafter, he

lost his right to discharge said mortgage by a return of the stock. *Chapin* v. *Jacobs* (1862), 10 Mich. 405; *Texas, etc., R. Co.* v. *Marlor* (1887), 123 U. S. 687, 8 Sup. Ct. 311, 31 L. Ed. 303; *M'Nitt* v. *Clark* (1811), 7 Johns. (N. Y.) *465. A serious injustice might be done appellee by requiring her to accept the stock in discharge of the mortgage at a time long subsequent to the demand, for the reason that, so far as appears from this paragraph of answer, the stock may have been worth its face at the time of demand, but may have so depreciated between the time of demand and the time of tender as to be entirely valueless.

The sixth paragraph of answer is a partial answer to the second paragraph of complaint, and purports to answer so much of said paragraph of complaint as seeks a foreclosure of the mortgage described therein for any amount in excess of the debt existing by reason of the loan by the mortgagee to the mortgagor of said 193 shares of stock in the Bement-Seitz Company. This paragraph avers, in substance, that said stock, at the time it was loaned, and ever since that time, possessed no market value, and its actual value at the time it was loaned and ever since had not exceeded $1,930. That there was at no time any consideration for said mortgage in excess of the actual value of the stock loaned.

In deciding the sufficiency of this paragraph of answer, it is necessary to place a construction on the mortgage sued on. The mortgage recites that the mortgagee had previously loaned the mortgagor 193 shares of stock in the Bement-Seitz Company of the par value of $19,300, and that the mortgagor had pledged said stock to a bank to secure certain of his debts. After the granting part of the mortgage, the condition follows in these words: "To secure to the said Mary V. Bement the return of said stock or the payment to her of its par value, and to indemnify her against loss on account of her having loaned said stock to George W. Bement, Jr., and the pledge afterward made of said stock as above recited." The question is, Does this

mortgage fix a lien on the real estate described for $19,300, the par value of the stock, in the event it is not returned; or is the amount of the lien in such case limited to such an amount as will indemnify her for any loss she may have sustained by reason of the failure of the mortgagor to return the stock?

The mere loan of the stock gave rise to no obligation on the part of the borrower except that of returning it on demand. It was not a sale; either absolute or conditional, and created no obligation on the part of the borrower to pay any sum of money at any time for the stock. The right of the lender to demand money for the stock could not arise until there had been a failure to return it on demand, and this right would not then arise out of an obligation created by the loan, but would arise out of the breach of such obligation.

7.

There is nothing in the mortgage to indicate that there had been a breach of the obligation to return the stock prior to the execution of the mortgage which had given rise to any obligation on the part of the mortgagor to pay any sum of money. It is quite clear, then, that the mortgage was not intended to secure the payment of $19,300, the par value of the stock, as an obligation, existing at that time, for no such obligation then existed. Under the conditions recited in the mortgage, there could be no consideration for fixing a lien on the land of the mortgagor which could be discharged only by the payment of the par value of this stock. We therefore conclude that the primary purpose of the execution of the mortgage was to secure the return of the stock borrowed. This was the only obligation which existed at the time and was the only consideration on which the mortgage could rest.

8.

This, however, was not the sole purpose of the mortgage, for, after stating that it is made to secure the return of the stock, it proceeds, "or the payment to her of its par value". Why were these words used, and what effect do they have

on the construction of the mortgage? It is evident that the parties contemplated that the mortgagor might fail to perform the obligation to return the stock, and might become liable for a breach of such obligation, and the purpose of these words is to provide that any damages which might arise and accrue to the mortgagee in the future by reason of the failure of the mortgagor to return the stock should be covered and secured by the lien of the mortgage. The question then remains to be considered, whether these words were intended to fix the par value of the stock as the amount which should be recovered in such event as stipulated damages, or whether they were intended to fix a penalty in an amount probably sufficient to cover any actual damages which might accrue in the event the mortgagor failed to return the stock? The intention of the parties is to govern, and this is to be gathered from the language of the instrument, considered in the light of the settled rules of law relating to the construction of such contracts. To the mind of the court, the language used clearly indicates that it was the purpose of the parties to fix a lien on the land described for the par value of this stock, for the purpose of securing to the mortgagee the payment of any actual damages, up to that amount, occasioned by any failure of the mortgagor to return the stock on demand. Immediately after the words "or the payment to her of its par value," follows this language, "and to indemnify her against loss on account of her having loaned said stock to George W. Bement, Jr., and the pledge afterward made of said stock as above recited". This language clearly indicates that it was the intention only to indemnify her against any loss she might sustain by reason of the failure of the mortgagor to return the stock on demand. The only loss she could sustain in such an event would be the highest value of such stock between the time of the demand and the time of trial, and the payment to her of such value would fully indemnify her.

It is urged in argument that the par value of the stock was fixed by the mortgage as the limit of the mortgagee's recovery, and that this limitation constituted a sufficient consideration for an agreement by the mortgagor to pay that amount. This argument is based on the erroneous assumption that the provision of the mortgage referred to does have the effect to limit the personal liability of the mortgagor to the par value of the stock in the event he should fail to return it on demand. The mortgage had no such effect. It does not contain any personal covenant on behalf of either of the parties to it, and therefore does not create any personal liability as to either party, and it cannot be construed so as to limit the obligation originally created by the loan of the stock or the personal liability that might arise after its execution on account of the failure of the mortgagor to return the stock. On failure to return the stock, the borrower would become personally liable for its value, even though that value was two or three times its par value, and this personal liability could be enforced, and was not in any way limited by the mortgage; but this liability could not be enforced against the land under the lien of the mortgage for more than the par value of the stock, for the lien created by the mortgage is limited to that amount. The same principle applies as in the case of a penal bond given to secure the proper accounting and payment of money. In such a case, the principal is personally liable for all money not accounted for, even though it may many times exceed the penalty of the bond; but in a suit on the bond against the principal and his sureties, the recovery is limited to the penalty named in the bond.

A court of equity regards a penalty as intended to secure the fulfilment of the contract, and not to enable one party to profit by the default of another, or to obtain an advantage that was no part of the original design. When, therefore, a breach admits of compensation, such a

tribunal will compel the injured party to accept a just compensation, and will not permit him to make use of the letter of his contract to obtain more. It is not always easy to distinguish between a penalty and liquidated

12. damages, but it has been generally held by the courts that when the damages likely to be occasioned by the breach are uncertain, and the sum fixed to be recovered on such breach is not grossly excessive or unjust, it will be treated as liquidated damages, but if the damages likely to be occasioned by the breach are susceptible of certain proof, and the amount stipulated to be paid on such breach is in excess of that amount, it will be treated as a penalty. *Kemble* v. *Farren* (1829), 6 Bing. 141; *Carpenter* v. *Lockhart* (1849), 1 Ind. *434; *Merica* v. *Buget* (1905), 36 Ind. App. 453, 75 N. E. 1083.

In this case the damages which would result from a failure to return the stock on demand would be its market value at the time of the demand, if it had a market value,

13. if not, then its actual value, unless a higher value could be shown between the date of demand and the time of trial, in which event the higher value would be the measure of damages. The damage is certain and susceptible of easy proof. It has been held that damages for the non-fulfilment of a contract of sale are certain within the meaning of the principle here announced. *Jemmison* v. *Gray* (1870), 29 Iowa 537; *Lee, Wyly & Co.* v. *Overstreet's Admr.* (1869), 44 Ga. 507.

The facts in the case of *Baird* v. *Tolliver* (1845), 25 Tenn. 187, 44 Am. Dec. 298, are very similar to those in this case. The court was called on to construe an instrument in writing reading as follows: "Received of Selden Baird four five per cent state bonds which we promise to return to him in twelve months or pay him $4,000 in current Tennessee bank notes. 25th Jan., 1842." It appeared that the market value of the bonds at the date of the covenant and during the intermediate period was from $600 to $800. The $4,000 was

held to be a penalty. The trial court should have overruled the demurrer to the sixth paragraph of answer, and the judgment will have to be reversed for error in sustaining the demurrer to this paragraph.

It is finally insisted that by the conduct of George W. Bement in the bankruptcy proceeding, as averred in the complaint, he assumed a position in reference to the 14. mortgage in suit, which is inconsistent with the position contended for in this case by his administrator. It is claimed that, by listing the real estate described in the mortgage in his schedules filed in bankruptcy proceedings as subject to a mortgage of $19,300, and by listing the claim of Mary V. Bement in his schedule of debts filed in that proceeding as a secured claim for the sum of $19,300, George W. Bement elected to treat the debt secured by the mortgage as a $19,300 debt and that such an election is binding on him and those claiming under him. The principles of equitable election find no application to the facts in this case.

15. Equitable election is defined to be, ''the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one, that he should not enjoy both.'' 2 Story, Eq. Jur. §1075. No case has been cited where this doctrine has been held to apply to a case like this, and we do not know of any equitable principle that would require its application in such a case. Whatever effect the conduct of George W. Bement in the bankruptcy proceeding may have had on his unsecured creditors, it most certainly did not injuriously affect appellee, or place her in any worse position. She knew all of the facts, and could have been in noway misled, and she is in no position to complain.

The judgment of the Vanderburgh Circuit Court is reversed, with directions to overrule the demurrer to the sixth paragraph of answer, and for further proceedings.

NOTE.—Reported in 94 N. E. 339. See, also, under (1) 2 Cyc. 989; (3) 27 Cyc. 1591; (4) 31 Cyc. 358; (5) 3 Cyc. 388; (6) 27 Cyc. 1521; (7) 5 Cyc. 191; (8) 27 Cyc. 1066; (9) 27 Cyc. 1133; (10) 27 Cyc. 1066; (11) 13 Cyc. 95; (12) 13 Cyc. 95, 97; (13) 13 Cyc. 169; (14) 16 Cyc. 796; (15) 16 Cyc. 785; 15 Cyc. 1086. As to the necessity of demand upon bailee to entitle bailor to enforce return of deposit, see 57 Am. Rep. 97. As to the recitals in a mortgage as evidence of what was intended to be secured, see 112 Am. St. 793. For a discussion of a stipulated forfeiture for the breach of a contract as a penalty or liquidated damages, see 1 Ann. Cas. 244; 10 Ann. Cas. 225; Ann. Cas. 1912C, 1021.