## COBB, BLASDEL & Co. v. THE I. C. R. R. Co.

1. **Statute of Limitations:** ACTION. An action against a railroad company for damages for a breach of a contract to transport freight, was *held* to be barred in five years from the time of the inception of the cause of action.

2. ———: ———: NEW PROMISES. A cause of action originating in a breach of a transportation contract is complete when, within a reasonable time, the carrier has failed to perform it; and from that time the statute of limitations begins to run. Subsequent demands for fulfillment by the consignor, and promises by the carrier, do not take the case out of the statute, because:

    1. Of the uncertainty as to the time when the liability accrued.
    2. The uncertainty would have continued as long as the carrier had the property and failed to transport it.
    3. This theory assumes a waiver of carrier's existing obligations at each demand.
    4. Subsequent promises to transport were not based upon any consideration. They were simply promises to do what the carrier was already under obligations to do.

3. **Common carrier:** TENDER OF FREIGHT: WHERE IT MAY BE MADE. Goods which are ready, at a place where the carrier may receive them, may be tendered for transportation to an agent authorized to receive or reject them, without regard to the place where the tender is made.

4. ———: ———: MADE BEYOND TERMINUS. While a railroad company could not, in the absence of express contract or custom, be required to deliver or receive goods beyond its terminus, yet such duty could be created by contract or a course of business, which would warrant those dealing with it in presuming that their goods would be received or delivered beyond such terminus.

5. **Practice:** APPEAL; INSTRUCTION. An instruction based upon an hypothesis unsupported by the evidence, should be refused.

6. **Action:** SEPARATE CAUSES OF. Tenders by different persons, acting as agents of plaintiffs, at different times and places, of separate lots of grain for transportation, all making the quantity refused to be transported, constitute but one cause of action for the refusal to transport the whole quantity.

7. ———: PLEADING: PRACTICE. Where a pleading fails to set out separate causes of action in different counts, the pleading itself must be assailed and the objection cannot first be made upon the introduction of evidence.

8. **Parties:** REAL PARTIES IN INTEREST. An undertaking by a railroad company to transport grain may be enforced by the party with whom the contract was made, and who was entitled to its benefits, notwithstanding he was not the owner of the property which was to be transported at the time of the making of the contract and the tender or delivery of the property.

9. **Practice:** SEVERAL CAUSES OF ACTION: VERDICT. Where there are several causes of action set up in different counts, and only one recovery prayed for, a verdict which is supported by the evidence introduced under any one of the counts, will be sustained.

10. ———: APPEAL: CONFLICTING INSTRUCTIONS. Where a verdict is in conflict with an instruction it must be set aside, even though such instruction is in conflict with the law; yet if it be in accord with another instruction which states a correct rule of law, it will be sustained. Following *Caffrey v. Groom*, 10 Iowa, 538.

11. **Railroads:** OBLIGATIONS WHILE UNDER GOVERNMENT CONTROL. The Act of Congress approved January 31, 1862, authorizing the President to take possession of all the railroad lines in the United States for military purposes; the order of the War Department, thereunder, of May 25, 1862, directing all railroad corporations to hold themselves in readiness for the transportation of troops and munitions of war, to the exclusion of all other business; the order of Dec. 24, 1863, by the commander of the division, placing all military railroads in charge of the Quartermaster's Department, with power to exclude from transportation all but military freight; and finally, the order of the Quartermaster of the division, directing that defendant's road should transport government freights to the exclusion of all 'private property, *if necessary*, and that supplies contracted for by government agents should take precedence of private freight, would not release defendant from its obligation to receive and transport freight tendered to it, when it appeared that the government did not actually take charge of the road; that defendant held itself out to the public as a common carrier; that there was no evidence of the existence of a necessity for the exclusion of private property from transportation, and that the freight tendered to it was supplies purchased for the government by the plaintiffs, who were government contractors.

12. ———: EXTRAORDINARY REQUIREMENTS. It is not error to refuse to instruct a jury that a railroad company which has facilities for doing its ordinary business is "not bound to provide additional tracks and warehouses to accommodate an unforeseen accumulation of freight at any particular point," since the determination of what the company ought or ought not to be required to do in the emergency is a question of fact for the jury.

13. ———: PARTNERSHIP. A partnership is not bound by the acts of another partnership having a common member, unless it authorizes and sanctions those acts.

14. ———: CONSIGNMENT. A consignor is not liable for neglect in refusing to receive and store goods consigned to him, unless he has authorized the consignment or is otherwise bound to receive the property.

15. ———: ———. If under obligations to receive the consignment, plaintiffs were not obliged to accept grain rejected on account of its condition caused by defendant.

16. ———: NEGLIGENCE. What acts of the shipper of freight constitute negligence, releasing the carrier from liability, should not be laid down by the court, but determined by the jury.

17. Practice: STATUTE OF LIMITATIONS. The commencement of the action, which terminates the running of the statute of limitations, is the service of the notice or its delivery to the sheriff for service. An amendment of a petition which sets up no new cause of action, but simply states the original in another form, may be filed after the lapse of the statutory period of limitation.

18. Common carrier: CONTRACT: TIME OF PERFORMANCE. In the absence of an agreement, the carrier is bound to deliver freight within a reasonable time, which must be determined by the circumstances of the case, irrespective of the shipper's necessities or his contracts.

19. ———: ———: SPECIAL DAMAGES. When property is delivered to the carrier or actually shipped, he is entitled to notice of circumstances requiring expedition in its transportation, if special damages are to be claimed for a failure to deliver it within the specified time.

20. ———: ———. The refusal to give an instruction embodying this principle, when damages are laid for a failure to *recieve* goods tendered for transportation, was error without prejudice.

21. ———: ———: INTEREST. Interest may be considered as an element of damages recoverable from a common carrier for breach of a contract to receive and transport freight. Following *Smith v. C. & N. W. R. R. Co.*, 27 Iowa, 22; and distinguished from *Richmond v. The D. & S. C. R. R. Co.*, 33 Iowa, 422.

22. ———: ———: MEASURE OF DAMAGES. For the breach of a contract to receive, transport and deliver grain, the measure of damages to be recovered against the carrier is the difference between the price of the grain fixed by plaintiff's contract of sale and its value at the place where it was offered for transportation, less the freight to destination.

23. ———: ———: ———. If the shipper's interest is simply a contract of purchase, the measure of damages is the difference between the contract price of purchase and the contract price of sale, less the cost of freight between the places where the contracts were made.

24. ———: ———: ———. The damages are not lessened by plaintiffs' settlement with their vendors for sums less than the purchase price of the property. The *legal* liability of plaintiffs under their contract of

purchase fixes defendant's liability, which cannot be varied by the manner of plaintiffs' discharge of their obligations.

25. **Practice in the Supreme Court:** ARGUMENT. Exceptions not discussed and assigned errors not insisted upon in argument, will not be considered.

26. **Verdict:** GENERAL: SPECIAL. Where, in an action for damages under a cause of action set out in different forms, in distinct counts, a special verdict was rendered under one count inconsistent with the general verdict, the amount of the former was deducted from the latter, and judgment rendered upon the modified verdict.

*Appeal from Buchanan District Court.*

· THURSDAY, JUNE 18.

ACTION at law to recover damages on account of the failure and refusal of defendant to carry a large quantity of oats from Dubuque, and other points upon defendant's railroad, to Cairo. The original petition was filed March 5th, 1870, and contains five counts. The first count alleges that, on the first day of March, 1865, the plaintiffs, who were government contractors, and engaged in the business of supplying forage for the United States' armies during the late rebellion, delivered to defendant, a corporation organized under the laws of the State of Illinois, and engaged as a common carrier, in operating a railroad between Dunleith and Cairo, both in the State of Illinois, at the city of Dubuque in the State of Iowa, 100,000 bushels of oats, to be transported upon defendant's railroad to Cairo; that the oats had been purchased by plaintiffs for delivery at Cairo, under their contract with the United States, which was well known to defendant, and were received for transportation by defendant under a contract with plaintiffs therefor, and that defendant failed to carry and transport said oats within a reasonable time; and, although often requested, has wholly neglected and refused so to do, whereby the said property became wholly lost to plaintiffs.

The second count alleges that on the 15th day of March, 1865, the plaintiffs tendered and offered to deliver to defendant at the city of Dubuque, and requested it to receive 100,000

bushels of oats to be transported to Cairo, which defendant would not accept, and refused to carry them.

· The third count charges a failure and refusal of defendant to carry 50,000 bushels of oats from Galena, in the State of Illinois, to Cairo, offered and tendered to it for transportation on the 15th day of March, 1865.

The fourth count alleges a like tender, on the same day, of 20,000 bushels of oats for carriage to Cairo, at Council Hill, Illinois, and a like refusal on the part of defendant.

The fifth count is identical in its allegation with the preceding one, except that the offer of the oats to defendant was at Polo, in the State of Illinois.

The damages claimed upon all the counts is $200,000; no separate claim of damages was made on any one count.

On the 11th day of December, 1871, plaintiffs amended their petition by adding a sixth count, which alleges that plaintiffs, having entered into contracts with divers persons for the purchase from them of a large quantity of oats to be delivered at Dubuque, Galena, Council Hill, Warren, and Polo, to defendant for transportation to plaintiffs at Cairo, they furnishing transportation, and agreeing to pay for said oats when the same should be delivered to defendant, applied to defendant for such transportation, and, in consideration thereof, and the freight to be paid upon such property, defendant undertook and agreed to furnish cars to carry the oats to Cairo, and that, although the oats were offered to defendant to be carried under said contract, defendant failed, refused and neglected to transport them.

On the same day plaintiffs struck from the amendment of their petition all averments of a special promise of defendant to transport the grain, and filed, as a further amendment, the seventh and eighth counts.

The seventh count sets up a written contract with defendant to transport the grain mentioned in the sixth count, and the allegations are substantially the same as those of the sixth count, except as to the special written contract made with defendant.

The eighth count is substantially the same as the seventh,

except the agreement with defendant is averred to have been verbal.

Two hundred and fifty thousand dollars damages are claimed upon the first amended petition, and five hundred thousand on the last. In the amended petition last filed, plaintiffs state "that they claim to recover for but one of the causes of action set forth in the 6th, 7th and 8th counts of their petition, or for the five causes of action set forth in the first five counts of their petition."

Subsequently, (May 23, 1872,) plaintiffs amended the first five counts by inserting the words "five hundred thousand bushels" in place of the words designating the quantity of oats mentioned in those counts.

The answer of defendant, as it finally stood after amend-ments, denied generally the allegations of the petition. Its second count sets up that, at the time of the transactions referred to in plaintiffs' petition, the railroad of defendant was in the possession of the government of the United States and under military control, so far as the road itself was concerned, and the defendant and its officers and agents were deprived of the management of the railroad and defendant ceased to be a common carrier.

The third count alleges military possession and control of the defendant's railroad as to that part thereof which leads into the city of Cairo and, in consequence, defendant ceased to be a common carrier. The fourth count sets up that, at the time mentioned in the petition, there was such a great accumulation of freight at Cairo, consisting almost entirely of government forage, that plaintiffs' oats could not be discharged or stored there; that although defendant's means and facilities for discharging grain at Cairo were amply sufficient for all ordinary occasions, yet the accumulation of freight at the time mentioned in the petition was so great, sudden and unexpected, and the owners and consignees of freight, including plaintiffs, neglected and refused to receive and take charge of the grain aforesaid.

The fifth count alleges that plaintiffs refused to receive and take charge of grain and forage shipped to them by defendant

at Cairo, but left the same in the charge of defendant, and thereby largely contributed to preventing defendant transporting the grain mentioned in plaintiffs' petition.

The sixth count pleads the statute of limitations.

The seventh sets up the statute of limitations of the State of Illinois.

On the 12th day of December, 1871, defendant filed an amendment to its answer, which, as a defense to the sixth and eighth counts of the plaintiffs' petition, avers that the causes of action set out therein are different from the causes of action set out in the 1st, 2d, 3d, 4th, 5th and 7th counts of the petition, and that they are barred by the statute of limitations, and further, that the causes of action of these same counts (the 6th, 7th and 8th) are barred by the statute of limitations of the State of Illinois, which is specially pleaded and set out.

An amended answer, filed May 7, 1872, sets out an act of Congress of January 31, 1862, authorizing the President of the United States to take possession of all railroad lines with the property pertaining thereto and place the same under control of military officers of the government, and that the President did, in pursuance of this law, take possession of defendant's railroad prior to the time referred to in plaintiffs' petition and that defendant, its officers and agents, were deprived of the control of the railroad, especially as to the transportation of freight.

The foregoing is a brief statement of the substance of the pleadings, so far as the causes of action and defenses thereto are concerned. Allegations that are not material to the points arising in the case and disposed of in the opinion are not noticed. No objection was made to either the petition or answers by demurrers or motions.

In May, 1872, the cause was tried to a jury and a general verdict for plaintiffs in the sum of $281,424.31 was rendered, with forty-six special findings. Judgment was rendered upon the verdict. Defendant appeals.

*Crane & Rood*, *Williams & Burr*, and *James F. Wilson*, for appellant.

*Griffith & Knight,* for appellees.

BECK, J.—The numerous objections to the judgment rendered by the District Court in this case, presented in the assignment of errors,. must be classified, and as far as possible, considered in groups involving the same or like principles, in order to bring this opinion within the bounds of reasonable length. The classification most natural and convenient is suggested by the character of the different defenses set up to the several causes of action declared upon in the separate counts, and is expressed as follows:

1. All exceptions to rulings made upon questions involving the cause of action and defenses thereto, under the first count.

2. The like exceptions arising under the second count.

3. Those under the first six counts.

4. Those under the eighth count.

5. General exceptions, applicable to the final judgment, and those which are not included in the other classes.

This classification will require the subdivision of the different objections falling within these several classes, in order that our discussion may be pursued with satisfaction, and in conformity with the plan we have adopted. All questions arising upon the rulings of the court and special findings of the jury will be discussed in the order they are thus presented. By adhering as closely as possible to the order we have thus marked out, we hope to bring this opinion within a reasonable limit. The jury found for defendant upon the seventh count. As plaintiffs have not appealed, no question under this count is before us for consideration.

### I. EXCEPTIONS UNDER THE FIRST COUNT.

I. In this class are included many exceptions based upon instructions given and refused, an exception to rulings upon the admission of evidence, and two objections to rulings refusing to set-aside findings of the jury. The determination of one question, as it involves the right of plaintiffs to recover

under the first count at all, and we therein reach a conclusion adverse to that right, relieves us of the necessity of passing upon other points arising in .this branch of the case. Our views and conclusions upon this question we will now attempt briefly to present.

The first count, as a cause of action, alleges that plaintiffs, on the first day of March, 1865, delivered to defendant at Dubuque, 500,000 bushels of oats to be carried to Cairo, in the State of Illinois; that defendant accepted and became bound to transport the grain within a reasonable time, but refused and failed so to do. To plaintiffs' right to recover upon this count, defendant, by proper plea, interposed the statute of limitations. Upon this count, as is shown by the 32d special finding of the jury, plaintiff recovered $93,596.50. The jury found, as appears by their special verdicts, 30($a$) and 30($b$), that the defendant had no reasonable excuse for not carrying the oats specified in the first count before the 5th day of March, 1865; and that it is guilty of negligence and a violation of its duty as a common carrier in not doing so prior to that date. It thus incontestably appears that plaintiffs' cause of action arose in favor of plaintiffs prior to the fifth day of March, 1865, more than five years before the action was commenced, which was on the 5th day of March, 1870. Now unless the cause of action upon which recovery is had arose within five years, plaintiff cannot recover. Thus far there is and can be no dispute between counsel. But plaintiffs' counsel insist that the finding only shows that *a* cause of action, not the identical cause of action of the first count, arose at a time beyond the limit prescribed by the statute. With great ingenuity they argue, that it does not follow as a consequence from the special findings that the jury could not and did not find that plaintiffs waived the liability arising before the fifth of March, 1865, and relied upon a cause of action subsequently accruing on account of defendant's failure to transport the oats after that date, and within a reasonable time from the day of . delivery. They insist that the evidence supports this view, and that plaintiffs repeatedly requested defendant during the month of March, 1865, to

*1. STATUTE of limitations: action.*

transport the oats, and defendant as often agreed to do so. They argue that defendant's liability was waived by plaintiffs, and renewed by defendant's promises to perform its duty, and to discharge its obligations as a carrier.

It will be seen that the only question for us to determine, under the pleadings and special findings of the jury, is this: When did the cause of action accrue upon which the jury find damages for plaintiffs, as shown in the special verdicts?

The language of the first count and of the special findings, leave no doubt on this question.. The cause of action is averred in the petition to have accrued March the 1st, 1865; in response to the allegation, the jury say that defendant had no reasonable excuse for not carrying the oats before the 5th of March, 1865, and was guilty of negligence, and a violation of duty in not doing so. Now it seems to us that the consideration of these facts, as averred and found, settles the question. The defendant was negligent and did violate its duty before March 5, 1865. A cause of action thereupon accrued.

Counsel for plaintiffs argue that, as the evidence shows, plaintiffs often, during the month of March, 1865, requested the transportation of the grain, and defendant as often promised to do so, (facts that need not be disputed,) plaintiffs' cause of action must be regarded as having accrued upon these requests and promises. But several insuperable objections to this view may be mentioned; among others the following: 1. It would be impossible to determine just when the liability did accrue upon counsel's theory, for under it they base its inception upon a demand and neglect to perform a duty, both of which were often repeated. At which demand and refusal to perform the contract to carry the grain did liability of defendant accrue? The first, last, or an intermediate one? 2. The liability would have continued in this uncertainty as to its inception, as long as the defendant held possession of the property, and failed to transport it. 3. The position assumes a waiver of defendant's prior obligation, and liability at each renewal of the demand, and a new contract for transportation, and a new delivery at each of such times, a presumption that has no support in the evidence, and is in

2. ——: ——: new promises.

direct conflict with the pleadings and special findings.  4. It nowhere appears and is not claimed, that the subsequent prom-. ises to carry the grain, to perform the contract for transportation, were based upon any new consideration, or upon any consideration at all.  They were simply promises to perform a contract by which defendant was bound at the time.

 · The true view of the law as applicable to the facts is this: Defendant became liable at the expiration of a reasonable time after the oats were delivered, which the law would allow it for the performance of the duties imposed, to transport the grain. The plaintiffs could, after that, accept performance, and would thereby waive defendant's liability.  The fact that they urged. performance, did not change the date of the inception of defendant's liability.  Such cases are of frequent occurrence. in business affairs.  Men liable upon contracts or for damages, are often urged and requested to perform or discharge their. obligations in respect thereto, and in response promise so to do, yet it is never thought that thereby new obligations are created which discharge the old one, or that the inception of. such obligations is to be fixed at the making of such promises. The announcement of such a rule would astonish the legal profession.

When one is in default as to a duty or an obligation, a right. of action arises at the time liability accrues.  The statute of limitation begins to run from the time defendant first became liable.  Indulgence extended by the party to whom the defendant is bound, or any thing short of the extinction of the liability, or the commencement of an action, will not arrest the statute and defeat the bar created thereby.  These principles are familiar and of frequent application.  *Rheem's Adm'r v. Evans*, 66 Pa. St., 192. ,

The special findings of the jury fix the beginning of defendant's liability at a time prior to the fifth day of March, 1865. This conclusion is supported by the evidence, for it is shown that the grain was delivered many days prior to this date, and there is no ground for holding that a reasonable time for the transportation of the grain after delivery, and before the 5th

day of March, had not expired. The jury was justified in finding this fact.

We have had no difficulty in reaching the above conclusions; indeed they are forced upon our minds by principles that are not to be doubted, and by arguments that, in our opinion, are unanswerable. Counsel for plaintiffs have cited no authorties that sustain their position or that are in conflict with our conclusions. Indeed they cite none upon this point, which induces us to presume, knowing the industry and care which the learned gentlemen habitually display in presenting their causes to this court, that none are to be found supporting their position.

In our opinion, the special findings of the jury above referred to are in conflict with their general verdict. The cause of action upon the first count being barred, no damages assessed thereon should have entered into the verdict, and upon that count the jury should have found for defendant.

As we have before remarked, the conclusion we reached upon this point makes it unnecessary to examine the numerous objections arising under the first count to rulings upon instructions given and refused, the admission of evidence and other objections, presenting questions as to the sufficiency of the evidence under this count to support the general and special verdicts.

### II.   EXCEPTIONS UNDER THE SECOND COUNT.

II.   The second count declares for damages sustained by the refusal of defendant to transport 500,000 bushels of oats tendered to it at Dubuque. The evidence tends to show that a large quantity of oats was delivered to defendant in Dubuque and transported by it or its agents to Dunleith. The first count is based upon this delivery, and claims to recover for failure on the part of defendant to carry this grain to Cairo. The court directed the jury that, if they found the grain mentioned in the first count was not in fact delivered, they were at liberty to find, if the evidence warranted such a conclusion, that it was tendered under the second count, and if, under the facts and the law, as given by the court, plaintiffs are entitled to

recover for the grain tendered by them for transportation, the oats mentioned in the first count would constitute an element in assessing plaintiffs' damages under the second count. An instruction was asked by defendant, and refused, to the effect that there could be no tender in Dubuque of the oats carried to Dunleith, and if the jury found that the transfer of the grain to Dunleith was completed on the 21st of February, 1865, any cause of action plaintiff may have for the tender of oats in Dubuque, is barred by the statute of limitations. The rulings upon these instructions are made grounds of objections; we think the rulings are correct. A brief consideration of the facts contemplated by the instructions, which the jury were required to find in order to apply the rule given them, we think sufficiently vindicates our conclusion.

If the grain transferred to Dunleith was not in fact delivered to defendant, it could at any time be tendered to it for transportation, and the time of its transfer to Dunleith would have nothing to do with defendant's liability for or on account of such tender. The day upon which the tender was made, and not the day of its transfer to Dunleith, would fix the time when the statute of limitations would begin to run. This is plain. The jury were warranted in finding the time of such tender to be within the period of the statute of limitations.

We see no foundation for the position that oats in Dunleith could not be tendered at Dubuque for transportation. The evidence tends to show that defendant transacted business in Dubuque, received and delivered goods, and collected freights there. Dunleith was the terminus of the railroad, but we see no reason why plaintiff could not tender the oats to the defendant's agent in Dubuque, if it had one there properly authorized to receive the grain for transportation. All this would depend upon the custom and manner of defendant in transacting its business.

3. COMMON CARRIER: tender of freight: where it may be made

There was evidence which authorized the jury to find a tender in Dubuque to an authorized officer or agent of defendant. We do not understand that a tender of goods for transportation must be made at the very place where they may be. We cannot doubt that, if a merchant in Chicago, having grain in

Dunleith, in condition for transportation over defendant's railroad, should make a tender of it in Chicago to an officer authorized by defendant to reject or secure the grain for carriage, the tender thus made would bind defendant. It is not governed by the rules applicable to the tender of property for other purposes, as the transfer of the title and the like. If the goods offered for transportation are ready at a place where the carrier may receive them for that purpose, an offer to one having authority to receive or reject them is sufficient, without regard to the place where such offer may be made.

III. The defendant requested certain instructions to the effect that, being a corporation under the laws of the State of Illinois, it was not compelled to perform the duties of a common carrier in the State of Iowa, and that, as the line of its road was wholly within the State of Illinois, it was not liable for refusing to accept goods tendered to it for transportation in the State of Iowa.

These instructions, it is claimed, are supported on the ground that transporting goods or receiving goods for transportation without the State of Illinois is beyond the limit of the power of defendant prescribed in its charter, and is therefore *ultra vires*. The ready answer to this is that it does not so appear. That it did receive and deliver property carried by it in the city of Dubuque, was shown; but it is not shown that these acts were beyond its chartered powers.

It may be conceded that a railroad company, in the absence of express contract or custom, is not required to deliver or receive goods beyond its terminus. But it cannot be claimed that it would not be bound to do so by contract, or under a course or custom of business which would warrant those dealing with it in presuming that their goods would be received or delivered at a place other than the terminus of its road. We think these instructions were properly refused.

IV. An instruction was asked by defendant to the effect that, if the oats tendered at Dubuque for transportation by defendant could have been carried, by the exercise of reasonable diligence on the part of plaintiffs by another route, or by

the Mississippi river, to Cairo, in time to have enabled plaintiffs to deliver them to the Government on the contract, they can recover for defendant's refusal to carry the grain only the difference between the cost of transportation upon defendant's railroad and the cost of carriage over the other route.

This instruction was correctly refused for the reason that there was no evidence to which it was applicable. There was

5. PRACTICE: appeal: instruction. some evidence as to the fact that the grain could have been transported a part of the way by defendant's road, to a point from whence there was another railroad running to the city of St. Louis, but there is not one word to show that the grain could have been carried over this route. And by a stipulation it is shown that, on the 24th day of April, the Mississippi river was open to Dubuque from St. Louis, but it is not shown that there were means of carrying the oats upon the river. There is no evidence to warrant the conclusion that the oats could have been forwarded by any other route than over defendant's railroad.

V. Under the second count the evidence of a number of witnesses was admitted tending to show that each had tendered

6. ACTION: separate causes of. separate lots of oats for transportation by defendant. This evidence was objected to on the ground that the separate tenders constituted separate causes of action and, one having been shown, no other separate tender could be shown under that count.

The allegation of the count is that 500,000 bushels of oats were tendered. We fail to understand upon what principle it can be claimed that evidence in support of this averment must be confined to one act of tender. The fact that different persons acting as the agents of plaintiffs, or as the vendors of the property, at different dates, offered separate lots of grain, all making up the quantity which the petition charges was refused by defendant, it seems to us, constitutes but one cause of action. It bears a semblance to, if not like, an account for goods delivered or money paid by others for or on account of the plaintiff. The whole account, though made up of many items, is but one cause of action.

This court has held that under the practice of the Code of

1851 and Revision, two promissory notes make but one cause of action. *Mount v. Nehart*, 11 Iowa, 57.

And it has been held, under a system of pleading substantially the same as that of the Revision, that as to what constitutes a cause of action the law is not different from the rules prevailing under the old practice. *Hill, for use of, etc. v. Barrett*, 14 B. Mon. 85.

Certainly a plaintiff may recover in one action for various causes set out in proper counts. If this be not done, but all are united in one count, the defendant should, in a proper manner, assail the pleading and not raise the objection upon the introduction of evidence, as was attempted in this case.

7.——: pleading : practice.

### III.   EXCEPTIONS COMMON TO THE FIRST SIX COUNTS.

VI.   A defense to the first six counts is that plaintiffs are not the real parties in interest, entitled to prosecute this action. This defense is based upon the alleged ground that plaintiffs were not the owners of the oats tendered, as alleged in all of these counts, except the first. It will·be remembered that the 2d, 3d, 4th, and 5th counts allege the tender of oats at as many different places, namely: at Dubuque, Galena, Council Hill, and Polo, and that the ownership was in plaintiffs. The sixth count sets out the facts of the case, showing that plaintiffs made contracts with persons residing at these places and at Warren for the purchase of 500,000 bushels of oats, to be delivered to defendants for transportation to plaintiffs at Cairo, plaintiffs furnishing transportation at each of these towns, and making payment for the grain when it should be delivered to defendant. The defendant agreed with plaintiffs to furnish transportation at each of these towns, for the grain to be delivered them in pursuance of plaintiffs' contracts with the several persons aforesaid. The count contains proper averments of the tender of grain by the parties contracting with plaintiffs, and of defendant's failure and refusal to receive it, and of plaintiffs' loss resulting therefrom.

8. PARTIES: real parties in interest.

Now the point made by counsel for defendant is, that as plaintiffs were not the owners of the oats tendered, they are therefore not the real parties in interest, and cannot recover in this action.

It seems to us that it can hardly be questioned that the sixth count presents a cause of action entitling plaintiffs to recover. It alleges an undertaking on the part of defendant to transport property for, and on account of, plaintiffs, and for their benefit. It cannot be doubted that the duty of defendant to transport the oats was owing to plaintiffs, and the obligation so to do was to them. And it is very plain that any loss sustained by plaintiffs from defendant's failure to discharge this duty and obligation would constitute a cause of action in plaintiffs' favor. Indeed this position, to our minds, needs but to be stated in order to gain the assent of all.

The jury found for the plaintiffs upon the sixth count. It is true that they also found in the same way upon the 2d, 3d, 4th, and 5th counts. But the petition expressly states that the cause of action set up in the 6th count is identical with those set up in the counts just named, and claims to recover on but one cause of action. And the special finding of the jury upon this count explicitly states that they make one assessment of damages on the same cause of action; that is, the damages assessed by them under the sixth count are those and no other or more, than are assessed under the 2d, 3d, 4th, and 5th counts. Now, as to these counts which allege that the property in the oats was in plaintiffs at the time of tender, it may be admitted for the purpose of this discussion, that the evidence fails to support them, because it is not shown that at the time of tender, plaintiffs did own the oats, and that the findings of the jury are, therefore, wrong, and must be disregarded. But the findings on the sixth count must stand, for it is not in conflict with the evidence, and is under a count showing a good cause of action. The findings of the jury upon these several counts, including the sixth, are not different from the case of a general verdict for plaintiff, awarding damages upon a petition setting up the same cause of action by different allegations of fact in separate counts,

*9. PETITION: several causes of action: verdict.*

under Rev. § 2936. The verdict would be sustained if in accord with the evidence admitted under any one of the counts. The special finding of the jury shows that the damages to which plaintiffs were entitled upon the cause of action set out in the 6th count in one form, and in the 2d, 3d, 4th, and 5th in other forms and no more, entered into the general verdict.

These views relieve us of the necessity of considering the questions discussed by counsel, namely, whether the evidence supported the allegations of plaintiffs' ownership of the oats found in the 2d, 3d, 4th and 5th counts, and whether a tender or offer to deliver the grain for transportation passed the title to plaintiffs, with other like questions as to the transfer of title to personal property.

The instructions given to the jury, which are made the ground of objection in this connection, are correct and applicable under the sixth count. Those asked by defendant upon this point are in conflict with the instructions given, and were properly refused.

VII. Certain instructions given by the court, at the request of defendant, are to the effect that, to entitle plaintiffs to recover upon the first six counts of the petition, the title to the oats in question must have passed to plaintiffs. We have just seen that this cannot be the law applicable to the cause of action set out in the sixth count. Whether it is as to the 2d, 3d, 4th and 5th counts, it is not, as we have seen, important to inquire. The cause of action in that count is the same as is set out in the others just named, and the recovery upon the cause of action in the form as stated in the sixth count may be supported. We have pointed out that there is but the one recovery upon the single cause of action. As to the correctness of these instructions, applying them to the first count, no inquiry need be made, for we have determined that no recovery can be had on that count, the cause of action being barred by the statute.

We are to consider the correctness of the instructions in question in its application to the sixth count. The averments of this count, as we have above stated them, will be remembered.

Now, if the instructions in question are to be understood according to the plain import of their language, and are to be applied to the evidence intended to make out a cause of action under the sixth count, the findings of the jury were in conflict therewith. And under our former rulings, unless other matters appear which would take the case out of their operations, we would be required to reverse the judgment, because the verdict is in conflict with the instructions, even though such instructions are in conflict with the law. See *Caffrey v. Groom*, 10 Iowa, 548; *Jewett & Root v. Smart & Gillett*, 11 Iowa, 505.

*10. ——: appeal: conflicting instructions.*

But the court directed the jury that under the 8th count of the petition, it was immaterial to consider whether the title to the grain covered by the contracts therein set out did, or did not pass to plaintiffs, and if they found that defendant made and violated such contracts, the mere fact that the title to the oats did not pass to plaintiffs would be no defense in the way of their recovery. The 8th count is substantially the same as the 6th. The only difference, except in the form of expressions used, is that in the 6th count it is alleged defendant agreed to furnish transportation upon the contract being made by plaintiffs to purchase the grain, while it appears to be averred in the 8th count, that such agreement of defendant was after the grain was ready for shipment. This and perhaps one or two other similar matters constitute the only variance between the counts. The petition, as aforesaid, expressly states that the causes of action set out in the first five, and the 6th, 7th, and 8th counts are the same, and recovery is sought upon only one of the causes of action.

Now the instruction last referred to holds that plaintiffs may recover upon the 8th count, without regard to the title of the property. The jury found for plaintiffs on this count, and by their special finding it appears, just as it does in their special finding on the 6th count, that they, upon the 2d, 3d, 4th, 5th and 8th counts, find only upon one cause of action, and assess damages only upon that one. So it appears that the jury were directed that they could find for plaintiffs, upon the cause of action wherein they assessed the only damages awarded

plaintiffs under their findings on the 2d, 3d, 4th, 5th, 6th and 8th counts, without regard to plaintiffs' ownership of the grain. Here we have then a finding of the jury upon the identical cause of action covered by the 2d, 3d, 4th, 5th and 6th counts, in accord with an instruction of the court.

The findings of the jury, then, are in accord with one instruction, and in conflict with others. The instructions with which the findings conflict may not be in harmony with the law, as we have seen. While we may set aside a verdict which is contrary to erroneous instructions, we cannot do so where there are conflicting instructions, some of which, being in harmony with the law, support the finding. The jury cannot be said to have disobeyed the instructions of the court in that case.

In justice to the learned judge, who presided at the trial below, we are of the opinion that some of the instructions which are understood to hold that the plaintiffs must establish title in the grain in themselves, in order to recover, were given to meet the hypotheses that the purchases of the oats were made by a party other than plaintiffs, and they were not to have or acquire any interest in them until they were shipped, and that, prior to shipment, the party referred to held whatever interest in the oats the contracts of purchase created.

But, be this as it may, there is an undoubted conflict in the instructions, and all of those announcing the rule that under the sixth and eighth counts, plaintiffs could not recover unless the property in the grain was in plaintiffs, are erroneous.

The views we have expressed upon the question of ownership of the grain, render it unnecessary for us to consider other points made by counsel involving the same principles.

VIII. We come next to the consideration of that branch of the case which is called, in the words of counsel, " *The Military Defense.*"

By an Act of Congress, approved January 31, 1862, the President was authorized to take possession of any or all railroad lines in the United States, together with their rolling stock and all their appurtenances, and to place under military control all officers, agents and employes of the railroad corporations.

11. RAILROADS: obligations while under government control.

By an order of the Department of War, dated May 25,. 1862, it was declared that the President took military possession of all railroads in the United States, and directed that the railroad corporations, their officers and servants should hold themselves in readiness for the transportation of troops and munitions of war "as may be ordered by the military authorities, to the exclusion of all other business." An official copy of this order was delivered to the proper officers of defendant.

By an order dated Dec. 24, 1863, issued by the military commander of the proper division, the Quartermaster's Department was placed in charge of military railroads "so far as relates to military freights and military passengers, with power to exclude such other freight and passengers as may be deemed necessary."

January 11, 1864, the Quartermaster of the proper division issued an order designating the defendant's railroad as one whose full force was required, and directing that government freights should be carried by it to the exclusion of all private property, *if necessary*, and supplies contracted for by government agents were to take precedence of private freight. Requisition was directed to be made upon defendant's agents for transportation to the full extent of their means, *if necessary*. The defendant had due notice of these orders. Other orders of like character were issued, and government property was transported thereunder.

Defendant asked the court to instruct the jury to the effect that these orders released the defendant from the obligations and duties of a common carrier. The instructions to this effect were refused, and one in the following language was given: "If the defendant held itself out as a common carrier, the mere fact that it was under the control of the military authorities in time of war did not excuse it from the performance of its duty to receive and transport the grain in controversy, if you believe that defendant had permission from the military authorities to receive and transport the grain." This instruction is clearly correct.

If defendant held itself out to the world as a common carrier, and had permission to carry other property than that

belonging .to government, the mere fact that government demanded its services and at any time may have excluded all property from transportation except its own, would afford no excuse for the defendant refusing to take the grain of plaintiff offered or delivered to it. And this for the simple reason, that it would be liable for not doing that which, as a carrier, it offered to the world to do and had the power and capacity to perform. It is not at all difficult to understand that defendant may have been subject to military control, and the military officers of the government may have used the railroad to the extent of their requirements, and have had the authority at any time to have appropriated it entirely to public use, yet all the time defendant may have transacted the business of a public carrier, and held itself out to the world as such, and at the same time had the ability to carry all property. offered to it, and the permission of the military authorities so to do. In that case it cannot be earnestly insisted that it would not be held liable for omission or neglect of the duties it assumed.

In our judgment the evidence supports the verdict of the jury finding defendant liable, under this instruction, for the following among other reasons:

. 1. It appears from the evidence that the government did not take charge of the road in fact, but left it under the management of the officers of the corporation.

2. During the whole period covered by the transactions involved in this case, defendant held itself out as a common carrier.

. 3. The military orders were to the effect that government property should be carried to the exclusion of private property, *when necessary.* There is no evidence of the existence at any time of a necessity to exclude . private property from transportation, or that government officers declared the exis- . tence of such a necessity or action as though it did exist.

4. Government forage was directed to be carried, as well as supplies purchased, by the agents of the government. The grain in question was purchased for delivery to the government, and plaintiffs were government contractors.

: 5. The general military order was to carry government

Cobb, Blasdel & Co. v. The I. C. R. R. Co.

forage in preference to private property, and in several instances defendant was directed to carry plaintiffs' grain.

Other reasons could be mentioned in support of the verdict, but it is not thought to be demanded in order to vindicate our conclusions.

We have given attention to *I. C. R. R. Co. v. McLellan*, 54 Ill., 58, and other cases decided in the same court, cited by defendant's counsel, but we find nothing in them in conflict with our conclusions as to the questions of law involved in this point.

IX. An instruction to the effect that, if a railroad company has reasonable facilities for doing the ordinary business along its line, it is not bound to provide additional tracks and warehouses to accommodate an unforeseen accumulation of freight at any particular point, and if there be such an accumulation that the ordinary facilities are not equal to its protection and disposition, the company may refuse to carry property to such a point. The instruction is objectionable in this: it prescribes what the carrier shall not be required to do in the way of building other tracks, warehouses, etc. It is bound to do all that is reasonable, to use all reasonable means to accommodate its increased business. It was not for the court to say what means and exertions were within the reasonable requirements imposed upon it by the circumstances. That was a question to be determined by the jury. The instruction was properly refused.

X. Certain instructions were asked by defendant to the effect that the refusal or neglect of plaintiffs and of another firm composed in part of one of the plaintiffs to receive, store and take charge of large quantities of grain shipped to Cairo and consigned to plaintiffs for the use of the Government, and either accepted or rejected by the Government inspectors, whereby defendant was hindered and delayed in carrying grain to Cairo, did not impose the duty upon defendant to provide storage for such grain shipped as aforesaid, and such refusal and neglect of plaintiffs and the other firm, excused defendant from receiving or carrying plaintiffs' grain involved in this suit.

For several reasons, which may be briefly stated, these instructions were properly refused.

1. The negligent act of another firm which was composed in part of one of the plaintiffs, could not affect plaintiffs' rights, unless such act in some way was authorized or sanctioned by plaintiffs. The plaintiffs would be bound by the act of one of the partners pertaining to their business; but it cannot be claimed that plaintiffs, as a co-partnership, would be liable for the contracts or negligent acts of one of the partners pertaining to matters outside the firm business. Now, the business of the firm, for whose acts the instruction seeks to charge plaintiffs, had not, by the terms of the instruction, any connection with plaintiffs' business; that is, the affairs of the two firms, as contemplated by the instruction, were distinct and separate. The act or negligence of one firm in respect to its own business would not bind the other. It is, therefore, clear that plaintiffs cannot be charged with responsibility on account of the act or neglect of the other firm according to the terms of the instruction.

2. The plaintiffs would not be liable for neglect in refusing to receive, store and take charge of grain consigned to them, unless the consignment was authorized by plaintiffs or they were in some way bound to receive the property. The instructions contemplate neither condition.

3. The plaintiffs, although under obligation to receive the consignment of grain contemplated in the instruction would not be bound to accept grain rejected on account of its condition covered by the act of defendant. The instructions do not make such an exception.

4. The acts of plaintiffs and of the other firm contemplated by this instruction are, as a matter of law, pronounced negligent, and the defendant is held on account of such acts, free of negligence in the performance of its duty. But the question of the negligence of these parties is not one of law, but of fact to be determined by the jury. Other objections to the instructions could be pointed out, but the foregoing are sufficient to vindicate our conclusion that they were correctly refused.

IV. EXCEPTIONS UNDER THE EIGHTH COUNT.

XI. The original petition was filed March 5th, 1871, and claims to recover on account of defendant's failure and refusal to transport oats as set out in five separate counts, as follows: The 1st count charges failure to carry oats delivered at Dubuque. All questions arising under this count are disposed of under the first division of this opinion. The 2d count charges failure to carry oats *tendered* at Dubuque. The 3d, 4th and 5th charge a like failure as to oats tendered at Galena, Council Hill, and Polo respectively. The sixth count claims to recover by reason of failure and neglect to transport oats tendered at the places named in the 3d, 4th, and 5th counts, and also at Warren. The 8th count claims to recover for the same failure and neglect charged in the 6th count. The 6th, 7th, and 8th counts were filed December 11, 1871. The jury found for defendant on the 7th count; nothing, therefore, need be said about it.

The 2d, 3d, 4th, and 5th counts are based upon the duty and obligations of defendant as a common carrier; the 6th upon a special verbal contract made by defendant to furnish cars for the transportation of oats which plaintiffs had contracted to purchase and receive at Dubuque, Galena, Council Hill, Warren, and Polo, and the 8th upon a like contract made when the grain was ready for shipment. There are other differences in these alleged contracts which need not be mentioned, as they have no bearing upon the question now under consideration. The plaintiffs expressly aver in their petition that they claim to recover on but one of the causes of action set out in the 6th, 7th, and 8th, or in the first five counts; that is, their cause of action is stated in four different forms. One form is in the first five counts, and one in each of the other counts.

The jury found for plaintiffs upon the first five counts, and by special findings returned the amount of damages assessed upon each. On the 6th count they found also for plaintiffs, except as to the grain tendered at Warren, for which they were instructed plaintiffs could not recover; and they expressly

state that the amount fourd by them on this count is included in the first five counts. The "Warren oats," it will be remembered, were not covered by these counts. The jury also found for plaintiffs on the 8th count, and the amount of their verdict thereon they did expressly state is the sum found on the first five counts. It thus appears that plaintiffs did not recover for the "Warren oats," and the jury obeyed the instruction of the court not to find for them on the 6th or 8th count.

The grounds of recovery alleged in the 6th and 8th counts separately, and in the first five, are one cause of action stated in different forms, a manner of pleading recognized by our system of procedure in civil actions. Rev. § 2936. The fact that the "Warren oats" are included in the 6th and 8th counts, and not in the others, does not make the causes of action different. All that can be said is, that another cause of action, if it may be so called, is united in the 6th and 8th counts with the cause stated in the other counts. It cannot be disputed that the 6th and 8th counts separately, and the other five collectively, present but one cause of action, for the very reason that it is so averred in the petition. Suppose the jury had found, in addition to their verdict upon the first count, an additional sum upon the 6th, and another additional sum upon the 8th; that is, awarded to plaintiff separate and different damages upon each of these counts; their verdict would have been set aside because it would allow plaintiffs more than they claim. It is thus made plain that the plaintiffs, in their petition, claim to recover on one cause of action only, stated in different forms, and by the verdict have recovered on but one.

The defendant requested an instruction to the effect that, if the cause of action of the 8th count accrued more than 17. PRACTICE: five years before the amendment to the petition statute of limitations. presenting that count was filed, it is barred by the statute of limitations. It may be conceded, for the purposes of this case, that if the count presented a separate and new cause of action, the instruction asked would be correct. But as we have seen it is not a new cause of action, but the same one

upon which the original petition is based. The action would have been barred if not brought within five years after the cause thereof accrued. But it was brought within that period; the filing of an amendment setting up the cause of action in another form is not the commencement of the suit, it is not the bringing of *another* action. The commencement of the suit, and not the filing of the petition or any amendment thereof terminates the running of the statute. The commencement of the action is the service of notice, or the delivery of the notice to the sheriff for service. Rev. §§ 2744, 2811. Suppose an action be brought to recover money alleged to be due, on a written contract for goods sold and delivered. After the commencement of the action, plaintiff amends his petition showing the contract to be verbal. There being no doubt that the causes of action set up in the original, and amended petitions, are the same, no one can claim that the commencement of the action is the filing of the amended petition, and that the statute of limitation runs to that time. If it were a new cause of action stated in the amended petition, the case might be different. The counts added to the petition by amendment, present the same cause of action declared on in the original petition in a different form and nothing more. No question can arise upon the fact that the 6th and 8th counts, claim to recover for oats tendered at Warren, which were not covered by the first five counts. Under instructions of the court the jury excluded them from the damages allowed.

XII. The court was asked by defendant to instruct the jury that in case they found defendant agreed to carry the oats in 18. CARRIER: question, and was informed that they were to be contract: time delivered on a Government contract and no time of performance. was agreed upon between plaintiffs and defendant for the delivery of the grain, defendant would have the full time given to plaintiffs under their contract with Government for the delivery of the oats. The instruction was rightly refused. In the absence of any agreement, defendant was bound to deliver this grain within a reasonable time, which is to be determined by circumstances and matters connected with the defendant's business and not by plaintiffs' wants or obligations.

The hardships which the rule of the instruction would impose upon shippers are obvious. It is in conflict with the law governing the duties of carriers.

XIII. An instruction prescribing the duty of the parties under a contract of defendant to deliver the oats in question in time to enable plaintiffs to deliver them on a contract with the Government, and the effect of the refusal of plaintiffs to receive oats after a time mentioned, was properly refused, if for no other reason, on the ground that there was no evidence of any such refusal by plaintiffs.

XIV. The court directed the jury to the effect that if defendant was informed of plaintiffs' contract with the government and agreed to deliver the grain in question in the time required by the government contract with plaintiffs, in that case plaintiffs' damage is the difference between the contract price government was to pay for the grain and the price at the place of delivery to defendant, deducting freight. The defendant asked the court to instruct the jury in effect that, under such a contract between plaintiffs and defendant, (the latter having notice of the contract of the first with government) which was determinable upon notice to plaintiffs by the officers of the government, and notice was given to terminate it in that way at a future time, it was the duty of plaintiffs to give the defendant notice of the time their contract with the government would be thus terminated, in order that defendant might know within what time the grain must be transported. This instruction was refused. These rulings of the court raise the question whether the plaintiffs were required to inform defendant at the time they received notice of the termination of their contract with the government of that fact. Under a contract for transportation where property is delivered to, or actually shipped, the carrier is entitled to notice of any particular circumstances requiring expedition in transporting it, if special damages are to be claimed on account of a failure to transport the property within the time required. Under this rule, if defendant had received the oats for transportation, it may be that plaintiffs would have been required to notify it of the prospective expiration of their

19. ——: ——: special damages.

Cobb, Blasdel & Co. v. The I. C. R. R. Co.

contract with the government. This appears to be the doctrine of *The Ill. Cen. R. R. Co. v. Cobb, Christy & Co.,*— Ill.,[*] cited by defendant's counsel.

·But this rule, for obvious reasons, has no application to the case of the refusal of a carrier to receive goods. Certainly the fact that they are to be transported with expedition could be no inducement for the carrier to receive them. It cannot be supposed that a carrier who would refuse to receive property under ordinary circumstances, would accept it for transportation when more than ordinary diligence was to be used by him. The rule is intended to protect the carrier in the discharge of his duty when he has received property; it has nothing to do with his duty to receive. It was not, therefore, applicable to the case made under the eighth and other counts of the petition, charging defendant with liability on account of the refusal to receive for transportation the grain offered it. It may have been applicable under the first count. But if it should have been given under that count, its refusal is error without prejudice to defendant, as we hold that plaintiffs cannot recover on that count. We concluded that there was no error in the rulings of the court upon these instructions, as to the counts declaring upon a failure to transport the oats offered to defendant, and if they are erroneous as to the first count, it is without prejudice to defendant, and does not demand a reversal of the judgment.

V. GENERAL EXCEPTIONS TO THE FINAL JUDGMENT AND THOSE WHICH ARE NOT INCLUDED IN OTHER CLASSES.

XV. . The jury were directed that interest on the sums lost by plaintiffs, and for which compensation in this action can be recovered, may be included in their verdict as an element of damages. We have held that interest upon the amount of the value of goods lost or not delivered by a carrier is an element of damages recoverable in the proper action. *Mote v. The C. & N. W. R. R. Co.,* 27 Iowa, 22; *Richmond v. The D. & S. C. R. R. Co.,* 33 Iowa, 422, is not in conflict with the rule of the instruction which, we

21. ——: ——: interest.

---

[*] Not yet reported.

think, is correct, and in accord with the prior decision of this court just named.

XVI. The jury were informed in one instruction that plaintiffs' measure of damages was the difference between the price of the grain fixed by their contract with the government, and its value at the place where it was offered for transportation, less the freight to Cairo, and in another, that evidence introduced by defendant of the price the owners of the grain had realized by subsequent re-sales, was to be disregarded. These instructions, defendant's counsel insist, are erroneous. They claim that defendant is entitled to the benefit of any sales made of the oats at places to which they may have been shipped by the parties with whom plaintiffs had contracted to purchase the grain. The rule of the instructions bases the measure of plaintiffs' damages upon the market value of the oats at the place and time they were offered to defendant for transportation, and not upon what plaintiffs' vendors may have realized by a re-sale of the property. Its correctness will be readily seen by considering the rights and relations of the parties.

The measure of damages against a carrier for a violation of his duty or contract in respect to the transportation of property should be such as to do justice and award full compensation, and no more, to the party injured. *Bridgman v. St. B't Emily*, 18 Iowa, 510. Plaintiffs must be compensated for the profit they would have realized, which is the difference between the price they paid, or contracted to pay for the oats, and the price under their contract with the government, less freight to Cairo. They must also recover for the sum they paid, or are liable to pay, for the oats purchased by them or agreed to be delivered by the various parties with whom they contracted. If the oats were actually received by them, or were not, and only contracted to be delivered, in either case they must recover for the sums paid by them on account of the oats, or on account of their liability upon their several contracts to purchase oats. They must be made whole on account of these outlays, and also, as we have seen, must recover the profits that would have accrued to them.

Now they were liable to the parties with whom they contracted to purchase oats in the difference between the price fixed by their several contracts, and the market price of the oats, at the time and place when and where the contracts were to have been performed. This is the measure of damages between the vendor and vendee upon the failure of the latter to perform the contract of purchase. The rule is recognized by this court. *Davenport v. Wells*, 1 Iowa, 598; *Cannon v. Folsom*, 2 Iowa, 101; *Boies & Barnett v. Vincent*, 24 Iowa, 387; *Miller v. Casady*, 25 Iowa, 323; *Jemmison v. Gray*, 29 Iowa, 537.

Plaintiffs, then, must be compensated for the amount they paid, or are liable to pay on their contracts for the oats, which is the market price, deducted from the price paid by them or contracted to be paid. To this the profits they would have realized must be added. It will be readily seen that the profits of plaintiffs added to the amount paid, or for which they were liable, is precisely the difference between the market value, and the price fixed in the contract with the govenment, less freight. The instructions therefore announced a correct rule.

XVII. There was evidence tending to show that plaintiffs had settled with the parties of whom they had bought the oats, by the payment of sums less than these parties claimed or were justly entitled to claim against them. An instruction was given to the effect that this fact could not be considered to reduce plaintiffs' damages. We are of the opinion that it is correct. If plaintiffs' creditors, in order to obtain ready money, or to avoid litigation, or because of threatened insolvency of plaintiffs, or for any other reason, received in discharge of their claims less than was justly due them, this is no reason why plaintiffs should abate any part of their claim against defendant. And the law will not compel them to do so. The legal liability of plaintiffs on account of their purchase of the oats, fixes defendant's liability to them. And the liability of each party accrued and became fixed when defendant refused to recieve the oats for transportation. The manner of the discharge of plaintiffs from their liability and the sum

required for that purpose, cannot affect defendant's obligations to plaintiffs.

XVIII. Counsel for defendant insist that the general verdict, as well as many special findings of the jury, are not supported by the evidence, and present their views at great length upon this point. There is no great conflict upon the facts of the case as developed by the oral and documentary evidence. The main ground of counsel's complaint under this head is, that the jury's findings as to the damages, and their conclusions as to other matters, are in conflict with the conceded facts of the case, or with facts about which there is no dispute. It is not our custom to discuss at length questions of this character. In this case it could not be done within the limits of a reasonable number of pages, but would require as many more as we have already written. Such a discussion would be of no profit to the parties, or to the profession. We, therefore, content ourselves with saying that, after a careful and laborious examination of the evidence, we are satisfied that the general verdict and special findings, except so far as the cause of action of the first count is concerned, are well supported by the evidence.

XIX. Several questions arising upon the evidence introduced to support the first count need not be passed upon, as we 25. PRACTICE in the Supreme Court: argument. hold plaintiffs cannot recover upon the cause of action therein set out. Other exceptions to evidence are not discussed by counsel. Under our practice we are not required to consider them. The same may be said of other points made in the assignment of errors.

Many points are made by counsel that we have not noticed, for the reason that they are disposed of in the discussion of other points, or are settled by principles recognized in the progress of our discussion of other questions. In this manner all questions presented by the record are decided that are not particularly referred to in the foregoing discussion. We find no error except that the judgment of the court should have excluded the damages assessed upon the first count.

XX. We hold that plaintiffs' cannot recover upon the cause of action set out in the first count. A special finding of

# JUNE TERM, 1874. 633

the jury, specifies the amount allowed by them in the general verdict on that count to be $93,596.50.

We are authorized by the statute to render such a judgment as the court below should have entered. Rev. § 3536. Code, 3194. *Gilmore & Smith v. Furguson & Cassell*, 28 Iowa, 423. The special finding upon the first count is inconsistent with the general verdict, for under the facts specially found plaintiff is not entitled to recover on that count, yet the general verdict is partly composed of damages assessed thereon. The special finding controls the general verdict, and judgment must be given accordingly. Rev. § 3080.

**26. VERDICT: general: special**

The amount found upon the first count will be deducted from the damages assessed by the general verdict, $281,424.31, and judgment for the balance $187,827.81, will be at the option of plaintiffs rendered in this court, which will bear interest from May 26, 1872, the day the verdict was rendered in the court below. Otherwise the judgment of the District Court is affirmed.

MODIFIED AND AFFIRMED.